**UNITED PACIFIC INSURANCE COMPANY**

v.

**The UNITED STATES and William H. Kennedy, Trustee in Bankruptcy of Nils Sigurd Andersson, Third-Party Claimant.**

No. 292-62.

United States Court of Claims.
April 15, 1966.

Edward Gallagher, Washington, D. C., for plaintiff.

Gerson B. Kramer, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Seymour L. Coblens, Portland, Or., for third-party claimant. Reinhardt, Coblens & Stoll, Portland, Or., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.[1]

The Government is a stakeholder of funds admittedly due for completed performance of a contract. Plaintiff, a surety company which financed contract performance under a questioned assignment, and the third-party claimant, trustee in bankruptcy of the insolvent contractor, are rival claimants for the funds so held. At issue are whether the assignment is valid, and whether payment under it would constitute a voidable preference under Section 60 of the Bankruptcy Act (11 U.S.C. § 96), which the trustee in bankruptcy may treat as void.

Plaintiff is a qualified surety under Oregon law and is also engaged in the general insurance business there. Prior to June 1961, it had issued to Nils Sigurd Andersson, a contractor, performance and payment bonds covering certain road and bridge contracts in Coos County, Oregon, with the Bureau of Public Roads of the Department of Commerce and with the Oregon State Highway Commission. Andersson experienced a great deal of financial difficulty in performing the contracts, and as a result he and plaintiff entered into an agreement, on June 28, 1961, whereby a joint control bank account was opened in the First National Bank of Oregon to receive the proceeds payable to Andersson under the federal and state contracts and to apply these receipts to the payment of certain outstanding obligations.[2] Andersson was insolvent as of the date this Joint Control Agreement was signed, and plaintiff knew it or should have known it. Also, on June 28, 1961, as part of the agreement, Andersson executed and delivered to plaintiff an assignment of the proceeds of certain of the contracts entered into with the City of Medford and State of Oregon.

On December 16, 1961, Andersson was awarded a purchase order by the Federal Bureau of Public Roads to remove a slide which had occurred on a newly built road in the area where the above-described contract work had been performed. The purchase order contained no requirement for payment or performance bonds and none were executed. Anxious to perform this prospectively profitable contract, but lacking funds to do so, Andersson, on December 21, 1961, requested plaintiff to finance the performance from balances standing in the Joint Control Account. Plaintiff agreed upon Andersson's promise to furnish an assignment of the proceeds of the contract as security. On December 26, 1961, responsible officials of the Bureau of Public Roads were apprised of plaintiff's intention to finance this undertaking of Andersson, called the "Baker Slide Job," and agreed to withhold contract payments from Andersson if plaintiff would furnish documentary compliance with the Assignment of Claims Act (31 U.S.C. § 203). An assignment was sent to Andersson for execution on December 29, 1961, and was signed on January 2, 1962. On January 3, 1962, both the executed assignment and a letter from Andersson, dated January 2, were served on the Bureau of Public Roads.

The assignment in standard form assigned to plaintiff "all monies now due, or which may hereafter become due" to Andersson from the United States under the Baker Slide Job, and plaintiff was authorized to collect and endorse such payments as Andersson's attorney in fact. The letter from Andersson to the Bureau, which was filed along with the assignment itself, directed that all payments "now due or hereafter to become due, payable to the undersigned [Andersson] from the United States" under the Baker Slide Job "shall be sent in care of United Pacific Insurance Company, 627 Board of Trade Building, Portland, Oregon." In other words, Anders-

---

1. The court acknowledges the assistance it has derived from the opinion and findings of fact of Commissioner C. Murray Bernhardt. We have adopted his findings of fact and borrowed a substantial portion of his opinion.

2. The account was designated by the First National Bank as the "Andersson-United Pacific Construction Account."

son's checks were to be sent to plaintiff. The letter itself did not formally state that funds falling due under the contract were being assigned to plaintiff: it merely directed that all moneys due from the Bureau to Andersson should be sent in care of plaintiff. Although a witness for the Bureau testified that his agency treated the Andersson letter as merely a change of address rather than a notice of assignment, this contention is untenable within the context of the dealings between the parties involved. The Bureau had knowledge that plaintiff was financing Andersson's Baker Slide Job, had a copy of the purported assignment of contract proceeds, and promised plaintiff to temporarily withhold payments to Andersson pending perfection of the assignment.

On January 24, 1962, the Bureau of Public Roads issued a check in the amount of $18,291.04 payable to "Sig Andersson, % United Pacific Insurance Co., 627 Board of Trade Building, Portland, Oregon", and mailed it to plaintiff. The check was received by plaintiff, endorsed by one of its officials as Andersson's attorney in fact, and deposited in the Joint Control Account. The action of the Bureau in making out the check to Andersson and mailing it to plaintiff was consistent wtih defendant's recognition of the assignment, for it was known by all parties concerned that plaintiff was Andersson's attorney under the assignment, that it had authority to endorse checks payable to Andersson for deposit in the Joint Account, and that it was empowered, with Andersson's joint signature, to disburse funds on deposit.

On March 6, 1962, Andersson was adjudicated a bankrupt, and on that date the balance in the Joint Control Account stood at $13,500.43 [3]—an amount insufficient to cover outstanding bills. In addition, the United States at that time owed Andersson a balance of $26,453.75 on the Baker Slide contract. On September 6, 1962, the General Accounting Office offset against the $26,453.75 due the sum of $15,165.44 to cover back taxes owed by Andersson, and thus credited the bankrupt's account with a total of $11,288.31 on the slide job contract.[4]

In the petition filed in this court plaintiff claims title to the said $11,288.31 by virtue of the June 28, 1961, assignment from Andersson. The trustee in bankruptcy [5] filed a third-party petition asserting title to all funds remaining in the hands of the United States on the grounds that the purported assignment of contract proceeds from Andersson to plaintiff was void and ineffectual: (1) because plaintiff, as a surety company, was not a "bank, trust company, or other financing institution" as prescribed by the Assignment of Claims Act; (2) because no "written notice of the assignment" was delivered to the United States as required by the Act; and (3) because the assignment constituted a voidable preference under Section 60 of the Bankruptcy Act.

The parties stipulated before trial that defendant is entitled to its offset for back taxes in the amount of $15,497.29. After the trial commissioner made his report, the United States filed a written disclaimer of any further interest in the case and stated that it has become a mere stakeholder. Consequently, the sole remaining controversy in the case lies between plaintiff and the third-party claimant as to the $10,956.46 ($26,453.75 less $15,497.29) remaining in the Government's possession as the balance due for performance of the Baker Slide Job.

---

3. As to Baker Slide Job funds in the Joint Control Account—the check for $18,291.04 from the United States was deposited in the account, and a total of $24,786.82 was paid out for labor and materials bills incurred in construction of the project.

4. As will be seen, this $11,288.31 has been corrected by stipulation to $10,956.46.

5. Bernard B. Cantor was appointed receiver of Andersson's estate on March 7, 1962. He qualified as trustee in bankruptcy on April 6, 1962, and remained such until August 21, 1963, when his resignation became effective. William H. Kennedy, third-party claimant herein, was then duly elected trustee in bankruptcy and has since acted in such capacity.

After commencing its litigation in this court, plaintiff brought suit in the United States District Court for the District of Oregon against the First National Bank and the trustee in bankruptcy, claiming entitlement: (a) to the balance remaining in the Joint Control Account on the date Andersson was adjudicated bankrupt ($13,500.43), and (b) to certain other sums due on contracts from municipal and state authorities ($15,-887.58). The District Court awarded judgment to plaintiff on both items. See United Pacific Insurance Co. v. First National Bank of Oregon, 222 F.Supp. 243 (D.C.Ore. 1963).

As to the proceeds due on the state and municipal contracts, the District Court applied the law of suretyship and decided that plaintiff, by virtue of its having discharged its surety obligations by paying out sums in satisfaction of labor and materials claims far in excess of sums received as contract payments, had an equitable right to and lien on these funds superior to that of the trustee in bankruptcy.

In adjudicating the first issue, that of entitlement to the funds in the Joint Control Account, the District Court considered and discussed the effects of the Baker Slide Job. Specifically, the court directed its attention to the questions of whether the sum of $18,291.04 drawn to Andersson's name by the United States and deposited by plaintiff in the Joint Control Account amounted to a voidable preference, in that it was paid within 4 months of the contractor's bankruptcy, and whether the assignment under which the check was paid and deposited was void for noncompliance with the Assignment of Claims Act. The court dismissed the trustee's contentions that this or any of the other assignments in question were voidable preferences or an attempt to defraud creditors, for the court found that the assignments were made in good faith and for a valuable consideration. As to the Joint Control Account itself, the court decided that, since plaintiff had paid some $24,-786.82 out of the account for labor and materials bills incurred in connection with the slide job (substantially more than $18,291.04 received from the United States as contract proceeds), no part of the $13,500.43 remaining on deposit in the account could possibly be Baker Slide money.

The District Court then noted that, although the January 2, 1962, assignment of Baker Slide Job proceeds (the same assignment as that involved in the present litigation) did not comply with the provisions of 31 U.S.C. § 203, it was valid as between the parties themselves. The court's opinion pointed out that the Assignment of Claims Act had been enacted for the benefit of the United States alone, and that under the circumstances at hand—since the United States had recognized the Joint Control Agreement and the questioned assignment and in fact had paid the money to a party having a preference under the law of suretyship—the trustee in bankruptcy was in no position to complain.

However, the District Court declined, as a matter of comity, to adjudicate the issues relating to the $10,956.46 admittedly owing by the Government on the Baker Slide Job, since litigation over the entitlement to that fund was pending in the Court of Claims first.

Thus, with respect to the $10,956.46 now held in stake by the Government, we are called to make an adjudication of two of the issues discussed by the District Court—namely, the validity of the January 2, 1961, assignment from Andersson to plaintiff of the proceeds from the Baker Slide Job contract and the existence of a voidable preference under the Bankruptcy Act. On both questions we reach the same conclusion as did the District Court.

There is no need to discuss whether the assignment in question complies with all the provisions of the Assignment of Claims Act, for whether or not the transaction is valid as against the United States, it is in any event effective and binding on the parties. National Bank of Commerce v. Downie, 218 U.S. 345, 31 S.Ct. 89, 54 L.Ed. 1065

(1910); Martin v. National Surety Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937); McKenzie v. Irving Trust Co., 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1945); In re Webber Motor Co., 52 F.Supp. 742 (D.C.N.J. 1943). The statute was designed to protect the United States against frauds on the Treasury and a multiplicity of conflicting claims and to save the United States defenses which it may have to claims by assignors—not to regulate the equities of individual claimants as between themselves. Royal Indemnity Co. v. United States, 117 Ct.Cl. 736, 93 F.Supp. 891 (1950); Beaconwear Clothing Co. v. United States, 174 Ct.Cl. ——, 355 F.2d 583 (January 1966). The Government in the case at hand is a mere stakeholder of funds which are admittedly due to either the trustee in bankruptcy or the surety. Having no interest in the case other than the preservation of its offset for unpaid taxes, defendant has now withdrawn any objection it might have had to the validity of the assignment. Moreover, it should be noted that defendant in fact recognized the assignment and the joint control agreement and actually paid money to plaintiff in accordance therewith. In the absence of any attack upon the assignment by defendant we feel bound, following the dictates of equitable policy and sound precedent, to recognize the assignment and treat it as valid and binding between the parties. Martin v. National Surety Co., supra; McKenzie v. Irving Trust Co., supra; In re Webber Motor Co., supra; Royal Indemnity Co. v. United States, supra; United Pacific Insurance Co. v. First National Bank of Oregon, supra. Accordingly, apart from any question concerning bankruptcy law, plaintiff's right to the contract proceeds is, by virtue of the assignment, superior to that of the trustee.

We next consider the issues raised by the Bankruptcy Act, for the trustee in bankruptcy contends that, assuming the validity of the assignment, the transfer of funds to plaintiff thereunder constitutes a voidable preference under Section 60 of the Act, reading in pertinent part as follows:

A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor *for or on account of an antecedent debt,* made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class. [Emphasis supplied.] (11 U.S.C. § 96(a) (1)).

The problem here is twofold: whether (a) $3,145.45 advanced by plaintiff to Andersson prior to the January 2, 1962, assignment and in anticipation of it (footnote 1, finding 14), and (b) $10,042.32 of the $15,497.29 offset by the Government for taxes, constitute debts antecedent to the assignment and within 4 months prior to bankruptcy, and are therefore voidable under the Bankruptcy Act.

▮▮ As for the assignment in general, there is little merit in the trustee's contention that it was made "on account of an antecedent debt." The assignment was made contemporaneously with the award of the Baker Slide Job and was in fact a prerequisite to plaintiff's acceptance of the financing arrangement. We agree with the conclusion of the District Court that the transfer in issue was effected for the very purpose of assisting the bankrupt and helping him to extricate himself from the financial difficulties which had beset him, not to defraud, hinder, or delay his creditors. On this point, a brief excerpt from the District Court opinion is relevant—

I can find nothing in the record to support the Trustee's claim that this, or the other assignments for that matter, was without consideration and therefore unenforceable. Whether I

view this assignment as an outgrowth of the original application, or view it as a separate assignment by reason of the fact that the Baker Slide job was not contemplated at the time of the initial application, a valid consideration is obvious. The duties assumed by plaintiff under the Baker Slide job would supply a sufficient consideration. [222 F.Supp. at 251–252]

■ The contractor's attempt to assign to plaintiff the $3,145.45 advanced prior to the assignment, however, was a transfer on account of a debt antecedent to the assignment and within 4 months of the then insolvent contractor's bankruptcy, and was thus voidable by the trustee in bankruptcy as a preference to plaintiff over other creditors. The assignment cannot relate back to embrace advances made by plaintiff in anticipation of the assignment, even though it was imminent and the premature payments were made to permit the contractor to proceed with the work without delay.

■■ In general, an assignment made as collateral security for a debt gives the assignee an interest in the assigned chose commensurate only with the amount of debt or liability secured. Plaintiff's security on the Baker Slide Job assignment extended only to amounts advanced by it to Andersson for subsequent contract performance, and did not cover contract receipts in excess of post-assignment contract disbursements. The Joint Control Account was charged a total of $31,919.87 on the Baker Slide Job, of which $24,786.82 was for direct expenses (material and payroll) and the balance for indirect expenses allocated to the contract (overhead, taxes, equipment payments), all segregated in finding 14. Thus, the assignment secured plaintiff to the maximum extent of $28,774.42 of these costs ($31,919.87 less $3,145.45 advanced prior to the assignment as stated above). This $28,774.43 is to be reduced by $18,291.04, the contract pay-

ment already remitted to plaintiff by the Government on January 24, 1962, leaving a net unreimbursed cost due plaintiff of $10,291.04. Converting this into arithmetical terms, of the $10,956.46 remaining in the Government's possession as the balance due for performance of the Baker Slide Job, plaintiff is entitled to $10,291.04, and the trustee to $665.42.

The trustee in bankruptcy argues additionally that any balances in the Government's possession due plaintiff under the assignment should be further reduced by $10,040.32, being that portion of $15,497.29 offset by the Government for taxes allocable to the earlier bonded contracts which plaintiff was bound to pay in the absence of the offset. The trustee's reasoning is that, since Andersson's performance of the Baker Slide Job created the fund upon which the tax offset could operate, and the offset tax claims were antecedent to the assignment, plaintiff is not entitled to at least $10,040.32 of the stakeheld funds because the withholding relieved it of liability for taxes just as clearly as if payment had been made to it. Aside from the fact that the trustee has failed to pinpoint the source of plaintiff's liability to pay the taxes on the bonded jobs (i. e., does it derive from the bonds, the joint control agreement, or the assignment?), it seems beyond question that the assignment was given to plaintiff for a present consideration, namely, *debts in futuro* under the Baker Slide Job, and that any balance of Baker Slide contract payments held by the Government is charged with a lien in the assignee's favor to the extent of the assignee's advances made to the contractor to perform that contract.

Accordingly, we find that plaintiff is entitled to recover $10,291.04 of the Baker Slide Job funds still in the possession of the United States, and the third-party claimant is entitled to the remaining $665.42. Judgment is entered to that effect.