Esther H. ROSE, Plaintiff, and Ora F. Duval, Intervenor,

v.

The UNITED STATES, and ALBERT TURNER & CO., Inc. and Bankers Trust Company, Third-Party Defendants.

No. 366–65.

United States Court of Claims.

March 17, 1967.

Bernard I. Shovlin, Philadelphia, Pa., for plaintiff.

Edwin J. McDermott, Philadelphia, Pa., for intervenor.

Ira M. Langer, Silver Spring, Md., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant. Lyle M. Turner and Philip R. Miller, Washington, D. C., of counsel.

Harry I. Rand, New York City, for third-party defendants. Weisman, Allan, Spett & Sheinberg, New York City, of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

COWEN, Chief Judge.

Plaintiff's petition, which covers facts spanning a 10-year period, focuses our attention on the limits of third-party practice as embodied in Rule 23(a) (1):

The court [or the commissioner], on its own motion or on the motion of either party, may notify any person with legal capacity to sue and be sued and who appears to have an interest in the subject matter of any pending suit to appear as a party and assert his interest therein.[1]

On June 28, 1957, the Department of the Army awarded a contract for the production of jacket liners to Aero-Fab Corporation, a Pennsylvania company of which plaintiff was secretary. Performance of the contract was financed by an arrangement between Aero-Fab and Albert Turner & Co., whereby Aero-Fab assigned all the proceeds due or to become due from the United States to Bankers Trust Company of New York City.

The assignment complied with the Assignment of Claims Act of 1940, 31 U.S. C. § 203, 1952 ed., and notification was properly communicated to the Government's contracting officer. By corporate resolution, Aero-Fab was authorized to borrow from Bankers Trust, and two officers of Albert Turner & Co. (Albert Turner and Joel Turner) were certified as the sole agents of Aero-Fab for the execution and delivery of drafts, notes, checks, or other instruments for the payment of money.

All deliveries under the contract were completed on April 17, 1958. Six days later, a petition for the arrangement of Aero-Fab under the Bankruptcy Act was filed and Ora Duval was appointed receiver by the United States District Court for the Eastern District of Kentucky. Notice of the receivership was given to the Government, Albert Turner & Co., and Bankers Trust Company.

By a letter of January 20, 1959, the Government requested that Bankers Trust release its 1957 assignment from Aero-Fab, or, if the bank's equity had not yet been satisfied, that it advise the Government of the amount still owing. In reply, Bankers Trust wrote that:

While at this writing all advances heretofore made to Aero-Fab have been liquidated in full, we nevertheless have been requested by the Assignor to continue to keep in effect the original assignment. This for the reason that the corporation may in the near future call upon us for additional advances under this contract.

On February 26, 1959, a supplemental agreement covering jacket liners in excess of the original contract quantity was executed between the United States and Ora Duval, Aero-Fab's receiver.[2] A total of $14,000 then became owing from the

---

1. Rule 23 was promulgated pursuant to the provisions of 41 U.S.C. § 114, 1964 ed. This enactment contains the express limitation that:

   "The jurisdiction of the Court of Claims shall not be affected by this chapter except to the extent necessary to give effect to this chapter, and no person shall recover judgment on any claim, or on any interest in any claim, in said court which such person would not have had a right to assert in said court if this section had not been enacted."

2. Duval was authorized to execute the supplemental agreement by an order of the Referee in the Bankruptcy proceedings.

United States, of which $2,500 represented an amount withheld for excess usage of Government property.

Despite the receivership of which they had notice and without authorization from the Referee in Bankruptcy, Albert turner and/or Joel Turner executed on behalf of Aero-Fab a note to Bankers Trust for $14,000. This was accomplished on March 12, 1959, pursuant to the corporate borrowing resolution of July 5, 1957. The money was paid into Aero-Fab's depository account at Bankers Trust Company and Albert Turner and/or Joel Turner later withdrew the $14,000 by a check drawn to the order of Albert Turner & Co., Inc.

An Army finance officer subsequently prepared a voucher for $14,000 payable to Aero-Fab's receiver, or the Treasurer of the United States and forwarded the voucher to the Comptroller General for direct settlement. Upon inquiry, Bankers Trust Company advised the General Accounting Office that the assignment of the contract proceeds was still in effect and that the amount due was $14,335. On February 29, 1960, Ora Duval, in his capacity as receiver for Aero-Fab, sent the following letter to the General Accounting Office:

> We are aware of the claim of Bankers Trust Company as assignee of Aero Fab Corporation due under contract No. DA 36–243–QM–(CTM)–486.
>
> I am sure the accounting by the Bank is correct, and suggest that this be paid as soon as possible.

Payment of the $14,000 was made to Bankers Trust Company on or about July 1, 1960.

On July 9, 1964, plaintiff involuntarily paid $10,388.89 to the Internal Revenue Service for penalty tax assessments levied against her in June of 1956 and July of 1957 pursuant to Section 6672 of the Internal Revenue Code of 1954 (26 U.S.C. § 6672, 1964 ed.). These assessments had been made against the plaintiff individually for failure to collect, account for, or pay over taxes withheld from the wages of Aero-Fab's employees in 1955 and 1956, while she occupied the position of secretary of the corporation.

Plaintiff's petition in this court alleges that the action of Albert Turner and/or Joel Turner in executing the $14,000 note on behalf of Aero-Fab was a fraud on the Government and that Bankers Trust Company was likewise guilty of fraud in accepting and paying the note. She asserts that the Government "should have applied the * * * $14,000 to the payment of the taxes assessed against and collected from" her.

Ora Duval, receiver of Aero-Fab, intervened in this action and filed a petition in which he seeks recovery against the United States for the $14,000 paid to Bankers Trust. Although the allegations of his petition are less detailed than the averments in plaintiff's petition, the intervenor seeks recovery on much the same grounds as those upon which plaintiff relies.

Among its defenses to both petitions, defendant avers that neither states a claim against the Government upon which relief can be granted and requests dismissal of the petitions on that ground.

With her petition, plaintiff filed a motion under Rule 23(a) (1) to bring in Bankers Trust Company and Albert Turner & Co. as third-party defendants. Plaintiff declares that "but for the action of Bankers Trust Company and Albert Turner & Co., Inc. in obtaining payment of said $14,000 from defendant, that amount would have been applied to the payment of the * * * federal withholding and other taxes assessed and collected from plaintiff." The motion was granted on November 1, 1965, and notices were issued and served on the third parties.

Bankers Trust and Albert Turner & Co. opposed the issuance of the notices on the ground that this court lacks the jurisdiction to bring them in as parties to the lawsuit. By order of June 9, 1966, however, the trial commissioner denied their request that the notices be vacated. In a second order, filed July 19, the commissioner granted a motion by the Government to summon the third parties, re-

quiring them to answer a contingent claim by the United States in the event that the plaintiff should recover on her basic claim.

From the two orders, Bankers Trust and Albert Turner & Co. sought review by the court. In calendaring the case for oral argument, we directed the parties to "discuss orally and through briefs the question of whether, assuming that plaintiff's factual allegations are correct, she has a legal claim against the United States."

In a recent case concerning third-party practice, this court announced that:

[T]he [Contract Settlement Act of 1944] is limited to situations in which the third-party defendants have an interest in a plaintiff's claim against the Government, which interest the third-party defendants might assert against the United States, or as a defense to the plaintiff's claim, or in connection with which the United States might assert a claim against the third party. It does not embrace actions by plaintiff against third parties, or by third parties against plaintiff to recover damages on causes of action not cognizable by this court.

Rolls-Royce Ltd., Derby, England v. United States, 364 F.2d 415, 417–418, 176 Ct.Cl. —— (1966). See also Richfield Oil Corp. v. United States, 151 F.Supp. 333, 335, 138 Ct.Cl. 520, 522–523 (1957); Oliver-Finnie Co. v. United States, 137 F.Supp. 719, 729–721, 133 Ct.Cl. 555, 557 (1956).

Implicit in the language of these cases, as well as in the provisions of the statute (41 U.S.C. § 114(b)), is a fundamental concept that goes to the very core of this court's jurisdiction: unless plaintiff's petition states a claim upon which recovery against the United States in this court may be premised, there is no basis for the exercise of our jurisdiction over third parties. Otherwise, the suit becomes one between private parties and the third-party practice becomes a device for circumventing the fact that our jurisdiction does not extend to such litigation.

Assuming, therefore, the truth of plaintiff's allegations, has she presented a legal claim against the United States? We think not. When the General Accounting Office made the payment of $14,000 to Bankers Trust Company, there was no indication that the latter's 1957 assignment from Aero-Fab had been terminated. Payment to the assignor, therefore, would have been made at the Government's peril. Central Nat'l Bank of Richmond, Va. v. United States, 91 F.Supp. 738, 741, 117 Ct.Cl. 389, 399 (1950).

Of greater significance is a provision in Aero-Fab's contract with the Department of the Army:

Notwithstanding any other provisions of this contract, payments to an assignee of any monies due or to become due under this contract shall not, to the extent provided in the [Assignment of Claims Act of 1940, as amended] be subject to reduction or setoff.

Where, as here, such a clause appears in the contract, the Assignment of Claims Act, 31 U.S.C. § 203 (1952 ed.), dictates that payments to an assignee shall not be subject to reduction or setoff by the Government for "any liability of the assignor on account of * * * taxes, social security contributions, or the withholding or nonwithholding of taxes or social security contributions, whether arising from or independently of such contract." Concerning itself with the purpose of this provision, the Supreme Court commented in Central Bank v. United States, 345 U.S. 639, 646, 73 S.Ct. 917, 97 L.Ed. 1312 (1953), that to permit the Government to offset an assignor's tax indebtedness against amounts due under an assignment would defeat Congress' intention "to encourage the private financing of government contracts." [3]

---

3. It should be noted that in *Central Bank* the Supreme Court held that a contractor-assignor's tax indebtedness arises "independently" of the contract.

Therefore, the main thrust of plaintiff's petition, i. e., that the "defendant should have applied the $14,000 to the payment of the taxes assessed against and collected from plaintiff," cannot stand when tested against the language and intent of the Assignment of Claims Act. There is no contention that the Government had notice that the 1957 assignment to Bankers Trust was no longer in effect at the time the balance due on the contract was paid to the assignee. Since the provisions of Aero-Fab's contract and the Assignment of Claims Act specifically precluded the defendant from making the setoff and applying the proceeds to the payment of Aero-Fab's taxes, the Government's failure to do so did not create any liability to plaintiff.

■■ The intervention of the bankruptcy proceedings does not change the result and our holding also bars any right of recovery by the intervenor. As shown by the above-quoted letter Mr. Duval sent to the General Accounting Office, the receiver not only approved the payment of the contract retainages to the assignee but suggested that payment be made as soon as possible. The management of Aero-Fab's affairs was then legally vested in Mr. Duval as receiver; therefore, his letter shields the Government from any liability to him or to Aero-Fab for the payment made to Bankers Trust. Moreover, we have held that the assignee's "right to the contract proceeds is, by virtue of the assignment, superior to that of [a] trustee [in bankruptcy]." United Pac. Ins. Co. v. United States, 358 F.2d 966, 970, 175 Ct.Cl. —— (1966).

A careful reading of plaintiff's petition reveals that, in reality, she is asking this court to settle a cause of action against Albert Turner & Co. and/or Bankers Trust. Whatever may be the merits of her claim against the third-party defendants, we must conclude that her suit lies beyond our jurisdiction. Berkeley v. United States, 276 F.2d 9, 149 Ct.Cl. 549 (1960); National City Bank of Evansville v. United States, 163 F.Supp. 846, 143 Ct.Cl. 154 (1958).

Inasmuch as we have decided that neither plaintiff nor the intervenor may recover on the only grounds urged by them, it is apparent that no genuine issue remains in the case. Therefore, plaintiff's petition and the petition of the intervenor, Ora Duval, are dismissed for failure to state claims upon which relief may be granted. The petition of the United States, which asserts a contingent claim against Albert Turner & Co., Inc. and Bankers Trust Company, is also dismissed, and the third-party defendants are dismissed from this action.