Robert M. **BAKER** and Harry E. Woods d/b/a Baker & Woods, Plaintiffs, Appellees,

v.

Lawrence S. **RAPPORT**, Defendant, Appellant.

No. 71–1056.

United States Court of Appeals, First Circuit.

Heard Nov. 15, 1971.

Decided Jan. 17, 1972.

Rodrigo Otero Suro, with whom Otero Suro & Otero Suro and Rodrigo Otero

Bigles, San Juan, P. R., were on brief, for defendant, appellant.

Harry E. Woods, with whom Baker & Woods, Santurce, P. R., was on brief, for plaintiffs, appellees.

Before COFFIN, Circuit Judge, VAN OOSTERHOUT,* Senior Circuit Judge, and STEPHENSON,* Circuit Judge.

STEPHENSON, Circuit Judge.

■ Defendant Rapport appeals from a judgment of the district court awarding plaintiffs-appellees, the sum of $15,829.68, plus interest, costs, and attorney fees on their complaint for attorney fees past due. The principal issue before this Court is whether the trial court erred in allowing appellees to show, despite the parol evidence rule, that their assignment of the debt due from appellant, to a third party, was actually a security transaction and not a sale extinguishing the debt due from appellant to appellees. Jurisdiction is based on diversity. Therefore, the law of Puerto Rico must be applied since the parol evidence rule is one of substance rather than of procedure. Wootton Hotel Corp. v. Northern Assur. Co., 155 F. 2d 988 (3d Cir.), cert. denied, 329 U.S. 758, 67 S.Ct. 111, 91 L.Ed. 654 (1946). Initially we summarize the trial court's findings essential to disposition of the problem before us.

In May 1965, appellees filed two civil actions in the Superior Court of the Commonwealth of Puerto Rico, San Juan Part, to recover attorney fees. One action was against appellant as sole defendant for legal service rendered to him in the amount of $9,761.30, plus interest. The other was against appellant and Borinquen Trans Mix Corporation, wholly owned by defendant, for services rendered the Corporation, in the amount of $23,068.38, plus interest. Appellant was sued as personal guarantor for the payment of the legal services rendered the Corporation.[1] In late August 1965, one Marvin S. Glickman, a close friend and business associate of appellant who had formerly been appellees' client, loaned $17,000 to appellant to make payment to appellees. The evidence showed that the transaction in question consisted of a loan or advance to appellant. Said amount was repaid by appellant to Glickman approximately four months later, in December 1965. Appellees, who were anxious to collect at least a part of their fees, accepted the $17,000 as partial payment for legal services admittedly rendered, and agreed to receive payment from appellant on the outstanding balance as soon as he completed the sale of his business. Glickman required appellees to furnish him adequate security to protect the $17,000 advanced to appellant. The parties agreed to secure the loan by means of assignments. On August 31, 1965, appellees executed two assignments whereby they transferred all their rights, title and interest in the collection of legal fees for services which was the object of litigation in the two Superior Court actions. The assignment also included the proof of claim in the bankruptcy action.[2] The local suits against appellant were dismissed without prejudice after execution of the assignments. The evidence showed that at the time of the 1965 assignment to Glickman by appellees of their local causes of action, as security for the $17,000 loan, " * * * the defendant was fully aware that he was not released from paying the balance owed. Subsequently, he promised to pay on several occasions and again failed to do so. It is clear that the intention of the parties to this transaction was not to discharge Rapport (appellant) of his personal promise to pay plaintiffs (appellees)." When appellant, in December 1965, repaid Glickman the $17,000 advanced, all of

---

* Of the Eighth Circuit, sitting by designation.

1. Appellees also later filed proof of claim for these services in bankruptcy proceedings of the debtor corporation.

2. See Fn. 1.

Glickman's interest in the assignment given as security ceased.

On these findings the district court concluded that the assignments although absolute on their face, were mere security devices; that plaintiffs retained a stake in the claims assigned to the lender (Glickman) and the right to collect the balance owed in the event that defendant failed to comply with his guarantee of payment; that defendant personally guaranteed to plaintiffs the payment of the balance owed in the amount of $15,829.68; that plaintiffs did not transfer the personal guarantee or promise of defendant to pay the balance of his indebtedness; that plaintiffs were entitled to maintain "this action based on defendant's personal guarantee;" that the defendant had shown obstinacy in the litigation; that judgment should enter for the $15,829.68, plus interest from August 31, 1965, the date of the assignments, and attorney fees in the amount of $1,000.00.

█ In arriving at the foregoing conclusions, the district court observed it had been unable to find a case in Puerto Rico substantive law directly in point. The court noted, however, that it is generally accepted that an assignment given as collateral security is commensurate with the debt secured even though the assignment executed is phrased in absolute terms, citing United Pacific Insurance Company v. United States, 175 Ct. Cl. 118, 358 F.2d 966 (1966); United States v. L. R. Foy Construction Company, 300 F.2d 207 (10 Cir. 1962). No Puerto Rico cases directly in point have been cited to us by either party, but we are satisfied that the trial court properly received and considered evidence which showed that the assignments executed by appellees were security devices and not absolute conveyances.

In Alvarado v. Bonilla, 86 P.R.R. 464 (1962), the Supreme Court of Puerto Rico held that the parol evidence rule did not preclude proof to show that what was stated in a deed was a simulation. In so doing the court reaffirmed previous holdings that Section 25 of the Law of Evidence (32 L.P.R.A. § 1668)[3] did not prevent the offering of proof to show the actual transaction between the parties. At page 474 the court stated as follows:

In Rossy v. Super. Ct.; Heirs of Llorens, Ints., 80 P.R.R. 705, we stated the following on p. 724: 'Furthermore, there is no question that it would be proper to admit evidence showing that the consideration set forth in deed No. 42 of October 29, 1919, or stated in the private agreement of like date, was not in fact what induced the parties to make those contracts. Nor does the rule which excludes extrinsic evidence to controvert or vary the terms of a written agreement preclude proof to show what was the real transaction between the parties, even though such transaction appears to be different from that stated in a public or private instrument. (Citations.)' See, also, Bigas v. Monforte, 76 P.R.R. 289.

See also, Heirs of Marrero v. Santiago, 74 P.R.R. 763 (1953); Ruiz v. Mario Mercado & Sons, 46 P.R.R. 791 (1934) and De la Rosa v. Quevedo, 47 P.R.R. 165 (1934).

---

3. When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreements other than the contents of the writing, except in the following cases:

   1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

2. Where the validity of the agreement is the fact in dispute.

But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section 1671 of this title, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term "agreement" includes deeds and wills, as well as contracts between parties. —Code Civil Proc., 1933, § 387.

This appears to be the general rule. In 30 Am.Jur.2d Evidence § 1068, it is stated:

> It is generally held that parol evidence is admissible to show that a conveyance or assignment, absolute on its face, was intended merely as security for the payment of a debt. This question arises most frequently in connection with showing that a deed absolute on its face is in fact a mortgage, or that a bill of sale is in fact a security.

At 6 C.J.S. Assignments § 93, the following general statement is made:

> An assignment that is made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured, although the assignment is absolute on its face.

See also, 15 Am.Jur.2d, Chattel Mortgages § 6.

After full consideration of the entire record herein, including a review of the original transcript of the testimony, we are satisfied that there is substantial evidence supportive of the trial court's findings that the assignments in question were security transactions, that appellant was fully aware that he was not thereby released from paying the balance owed, and that appellant personally promised to pay appellees the balance of $15,829.68. The matter of the credibility and weight to be given the testimony of the witnesses was for the trial court.

The trial court's finding of obstinacy[4] on the part of appellant in litigating this action is amply supported by the evidence. The allowance of $1,000.00 attorney fees was not an abuse of discretion in view of this record.

The judgment is affirmed in all respects.

---

4. See Pan American World Airways, Inc., v. Ramos, 357 F.2d 341 (1 Cir. 1966).