Carmen **JOHNSON**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 97–437C.

United States Court of Federal Claims.

July 10, 1998.

Linda Sue Andersen, Washington, DC, for plaintiff.

Salomon Gomez, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Philip E. Adams, Tricare Support Office, of counsel.

## OPINION

MEROW, Judge.

This matter is before the Court on defendant's motion to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(4) of the Rules of the Court of Federal Claims ("RCFC"). Plaintiff's amended complaint requests a money judgment against the United States for the full amount allegedly owed to the Psychiatric Institute of Washington ("PIW") for medical services rendered to plaintiff's son. Plaintiff, a former Sergeant in the United States Army, asserts that PIW is entitled to the amount sought under the Civilian Health and Medical Program ("CHAMPUS"). Plaintiff also requests an award of post judgment interest and attorney's fees for both plaintiff and PIW. PIW is not a party to this action. Concurrent with the filing of the amended complaint, plaintiff also filed a motion pursuant to RCFC 14(a) requesting the Court to notify PIW of the pendency of this action so that PIW might have an opportunity to appear as a party.

Regrettably, for the reasons stated below, it is concluded that this Court lacks subject matter jurisdiction over plaintiffs claims. As a result the amended complaint must be dismissed and plaintiff's RCFC 14(a) motion must be denied as moot. Defendant's RCFC 12(b)(4) motion is also denied as moot.

## BACKGROUND

### 1. Statutes and Regulations

The Dependants' Medical Care Act ("Act") provides that under certain circumstances, members of the uniformed services and certain dependants may obtain health care through civilian health care providers. Pub.L. No. 84–569, 70 Stat. 250 (1956) (codified as amended at 10 U.S.C. §§ 1071–1106 (1990)).[1] The program, known as The Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS"), is administered by the Director of the Office of CHAMPUS ("OCHAMPUS") pursuant to regulations promulgated under the Act. 32 C.F.R. § 199 et seq.[2] The Act authorizes the Secretary of Defense to contract with civilian sources for the medical care of members of the armed services and certain dependents of

---

1. The 1990 version of the United States Code is relied upon, unless otherwise indicated.

2. The 1990 version of the Code of Federal Regulations is relied upon unless otherwise indicated.

members of the armed services. 10 U.S.C. § 1079.

The purpose of the Act is the creation and maintenance of "high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members [of those services] and for their dependants." 10 U.S.C. § 1071. The CHAMPUS program is similar to private insurance programs, and is designed to provide financial assistance to CHAMPUS beneficiaries for certain prescribed medical care obtained from civilian sources. 32 C.F.R. § 199.4(a)(1). Benefits are extended either on an inpatient or outpatient cost-sharing basis in accordance with the status of the patient at the time the covered services were provided. 32 C.F.R. § 199.4(a)(4). Dependant children of active duty members are afforded medical benefits under the CHAMPUS program. 10 U.S.C. §§ 1072, 1076; 32 C.F.R. 199.3(b)(iv)(A).

The CHAMPUS program has previously been described as an "at risk" program, meaning that, with certain exceptions, medical care is received by beneficiaries without prior authorization from CHAMPUS. *Green v. United States*, 23 Cl.Ct. 393, 396 (1991). CHAMPUS then makes an "after-the-fact determination" whether medical care will be covered pursuant to its regulations. *Id.* CHAMPUS regulations specifically enumerate many of the exclusions to coverage, including the provision upon which CHAMPUS has relied to deny coverage in this case. The regulations provide in relevant part:

> (g) In addition to any definitions, requirements, conditions, or limitations enumerated and described in other sections of this part, the following specifically are excluded
>
> \* \* \* \* \* \*
>
> 11) ... [s]ervices or supplies for which the beneficiary or sponsor has no legal obligation to pay; or for which no charge would be made if the beneficiary or sponsor was not eligible under CHAMPUS; or whenever CHAMPUS is a secondary payer for claims subject to the CHAMPUS DRG-based payment system, amounts,

when combined with the primary payment, which would be in excess of charges ... 32 C.F.R. § 199.4(g)(11).

## 2. Facts

In April 1990, plaintiff Carmen Johnson was a Sergeant on active duty in the United States Army. Ms. Johnson was also Nathaniel Wilson Jr.'s mother. As the dependant child of a member of the armed services, Nathaniel was entitled to CHAMPUS benefits. 10 U.S.C. §§ 1072, 1076; 32 C.F.R. 199.3.

On April 3, 1990, pursuant to a Show Cause Hearing in the Fairfax County Juvenile and Domestic Relations District Court, an Order was issued stating that Nathaniel had been found to be abused and neglected. On that date Nathaniel was placed in the custody of the Fairfax County Department of Human Development ("Fairfax County"). Also on that date, for reasons undisclosed in the papers submitted to this Court, Fairfax County placed Nathaniel in the Psychiatric Institute of Washington (PIW), where he remained an inpatient until July 7, 1990. After that date, Nathaniel was placed at another facility known as Graydon Manor. Pl.'s Opp'n at 8. The costs of the services rendered at that facility have not been at issue in the federal lawsuits. Pl.'s Opp'n at 8.

Plaintiff was angry that her child was removed from her custody and placed at PIW. Pl.'s Sur Reply at 8. Her husband prepared a letter, dated August 8, 1990, which both plaintiff and her husband signed, informing the CHAMPUS Claims Department that Nathaniel was in "the primary custody of Fairfax County." Def.'s App. at 3. In the August 8, 1990 letter, the Johnsons also opined that Fairfax County, not CHAMPUS, was financially responsible for Nathaniel's care at PIW. Def.'s App. at 3.

Notwithstanding plaintiff's letter, prior to September 1990, CHAMPUS apparently made payment of $35,993.42 to PIW for Nathaniel's care. Pl.'s Opp'n at 8. Thereafter, by letter dated October 24, 1990, CHAMPUS informed PIW that it considered that sum to be an "overpayment" and demanded repayment. Pl.'s Opp'n at 8. On November 23, 1990, CHAMPUS sent another letter inform-

ing PIW that CHAMPUS was withholding $17,853.42, to be applied to the overpayment. It is unclear from the papers submitted whether the demand for repayment was appropriate and whether that determination was properly appealed pursuant to CHAMPUS regulations. *See* 32 C.F.R. § 199.10 *et seq.*

Over the course of the next five years, CHAMPUS, PIW and Fairfax County, through their respective attorneys, exchanged numerous letters in an effort to determine which party was legally responsible to pay PIW. Both PIW and Fairfax County asserted that pursuant to Virginia state law, financial responsibility for a minor child remains with the parents even when legal custody of the child is with a custodian. Virginia Code § 16.1–228 (1990). Nevertheless, CHAMPUS maintained the tentative position that the services provided to Nathaniel at PIW were not covered because plaintiff had "informed CHAMPUS that Fairfax County was liable for her son's medical care." Def.'s Mot. at 4. CHAMPUS apparently came to this conclusion by relying upon plaintiff's emotionally charged August 8, 1990 letter to CHAMPUS in which plaintiff and her husband stated that, in their opinion, Fairfax County had legal custody and concomitant financial responsibility for Nathaniel's care at PIW. CHAMPUS rationalized its reliance upon plaintiff's letter by citing to the CHAMPUS regulation which specifically excludes coverage for services for which the beneficiary has "no legal obligation to pay." 32 C.F.R. § 199.4(g)(11) (1990). Accordingly, CHAMPUS refused to pay PIW because, they opined, Carmen Johnson did not have a legal obligation to pay PIW.

On March 22, 1991, Fairfax County obtained an Order from the Family Court of Fairfax County ("Family Court"), finding that Carmen Johnson remained "financially liable to the best of [her] abilities" for the care of Nathaniel while he was in legal custody of Fairfax County. Def.'s App. at 14. Thereafter, Fairfax County obtained a second Order dated March 13, 1992 entering judgment against plaintiff in the amount of $132,049.44 (allegedly inclusive of the demand by PIW for payment of $62,483.33).

However, CHAMPUS refused to recognize either of these Orders as dispositive evidence that plaintiff was legally responsible to pay PIW for medical treatment rendered to her son because Virginia state law provided that only "after an investigation and hearing, the court shall order [the parents to pay]. . . ." Virginia Code § 16.1–290(A) (1990).

On April 14, 1993, PIW commenced an action against plaintiff in the Superior Court for the District of Columbia, Civil Division asserting claims of breach of contract and *quantum meruit* and seeking payment of $62,483.33 for medical services rendered to Nathaniel. PIW also sought interest upon that sum as well as attorneys fees. In order to pursue payment directly from plaintiff, PIW purportedly relied upon an agreement, included in a document entitled "Conditions of Admission," by which PIW alleged that plaintiff had agreed to become financially obligated to pay PIW for Nathaniel's care.

CHAMPUS continued to deny payment stating that neither plaintiff nor CHAMPUS were "legally obligated to pay" for Nathaniel Wilson's care at PIW. The denial of CHAMPUS benefits was explained in a letter dated June 10, 1993 and addressed to PIW's counsel. In that correspondence, CHAMPUS concluded that Ms. Johnson could still not be held financially responsible to PIW for Nathaniel's care under Virginia state law, because in CHAMPUS' opinion, there had not yet been a properly conducted "investigation and hearing" as to the parent's ability to pay for Nathaniel's care. Def.'s Motion to Dismiss, App. at 6–8.

On September 6, 1994, plaintiff brought a third party complaint against the United States and Fairfax County in the Superior Court action in which she raised allegations of breach of contract and negligence. On October 6, 1994, pursuant to 28 U.S.C. §§ 1331, 1441(b) and 1446, the case was removed from the Superior Court to the United States District Court for the District of Columbia ("District Court"). In response to motions from all parties requesting summary judgment, the District Court granted dismissal of the claim against the United States except for the breach of contract claim, which was transferred to this Court pursuant to 28

U.S.C. § 1631. The remaining claims between plaintiff, PIW, and Fairfax County are held in abeyance pending the outcome of this claim. In addition, on October 9, 1996, by Order of the District Court, Ms. Johnson was relieved from the March 22, 1991 Order (issued by the Family Court) against her by which Fairfax County sought payment for fees incurred in providing medical care to Nathaniel at PIW and other facilities.

Plaintiff initiated her claim against the United States in this Court on July 17, 1997 by service of an amended complaint. In her amended complaint against the United States, plaintiff alleges that she was an active duty enlisted member of the armed forces and, therefore, she and her dependants were entitled to enjoy medical benefits under the CHAMPUS program. Pl.'s Amend. Compl. at ¶¶ 3, 6. PIW is alleged to have been a participating provider under the CHAMPUS scheme. Pl.'s Amend. Compl. at ¶ 7. Assuming the relationship between PIW and CHAMPUS was contractual, the refusal of CHAMPUS to pay for medical services provided by PIW to Nathaniel is alleged to be a breach of contract. Pl.'s Amend. Compl. at ¶ 13. She further asserted that a dependent child's entitlement to CHAMPUS benefits is not dependent upon the parent having legal custody over that child. Pl.'s Amend. Compl. at ¶ 14. Accordingly, plaintiff seeks "payment of the full amount due and owing to plaintiff, PIW, [sic] plus post judgment interest at the legal rate and attorney's fees for plaintiff PIW's [sic] counsel and defendant Johnson's [sic] counsel" Pl.'s Amend. Compl. at ¶ 15. She does not state exactly what provisions are relied upon to establish jurisdiction in this Court.

Concurrently, plaintiff filed a motion pursuant to RCFC 14(a), requesting that the Court notify PIW as a potential party in interest that it might have standing to appear and assert an interest in this action.

### 3. The Parties' Contentions

On October 30, 1997, defendant filed a motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(4). Defendant argued that plaintiff failed to state a cause of action because she did not demonstrate the existence of a contract upon which to premise a claim for relief in this Court. It was further argued that even if a contract were established, neither Ms. Johnson nor CHAMPUS had been legally obligated to pay PIW for Nathaniel's care because under Virginia state law, an investigation and hearing had not yet been completed to determine the reasonable amount of financial responsibility that Ms. Johnson was required to provide. Def.'s Motion to Dismiss at 23–24.

In opposition, plaintiff asserted that her amended complaint was premised upon Ms. Johnson's status as a third party beneficiary to an express contract between CHAMPUS and PIW. Further, plaintiff asserted that since she was an intended beneficiary of the contract between CHAMPUS and PIW, she was entitled to commence an action for breach of contract. Plaintiff also requested leave to further amend her complaint to clarify the violations of federal statute and regulations by CHAMPUS for (1) refusing to pay for Nathaniel Wilson Jr.'s care and (2) refusing to provide an opportunity for administrative review of the denial. Pl.'s Opp'n at 15, 23.

### DISCUSSION

■ Under the rules of this Court, whenever it appears by suggestion of the parties or otherwise, that the Court of Federal Claims lacks jurisdiction of the subject matter, the court has an obligation to dismiss the action. RCFC 12(h)(3) (1998). This rule is applicable regardless of whether the defendant challenges the plaintiff's general jurisdictional allegations. *Green Hospital v. United States*, 23 Cl.Ct. 393 (1991) (finding Court had subject matter jurisdiction over claim against CHAMPUS brought by provider). The Court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Yeskoo v. United States*, 34 Fed.Cl. 720, *aff'd*, 101 F.3d 715 (Fed.Cir. 1996) *citing Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *see also Cupey Bajo Nursing Home, Inc. v. The United States*, 23 Cl.Ct. 406, 411–12 (1991).

It is well established that the Court of Federal Claims is a court of limited jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir.) *rehearing denied* (1997). Jurisdiction in this Court is conferred by the Tucker Act which provides in relevant part: "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (1998).

 Implicit within this grant of jurisdiction is the rule that "[t]he only judgments which the Court of Claims [is] authorized to render against the government ... are judgments for money found due from the government to the petitioner." *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) *citations omitted; See also, United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corporation v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1007 (1967). The jurisdictional parameters of the Court of Federal Claims do not allow every claim involving or invoking the Constitution, a federal statute, or a regulation to be heard in this forum. The claim must be for money.[3] *Eastport Steamship Corporation*, 372 F.2d at 1007. "Where the claimant is not suing for money improperly exacted or retained ... the historical boundaries of our competence have excluded those instances in which the basis of the federal claim-be it the Constitution, a statute, or a regulation-cannot be held to command, in itself and as correctly interpreted, the payment of money to the claimant, but in which some other principle of damages has to be invoked for recovery." *Yeskoo v. United States*, 34 Fed.Cl. 720, 729 (1996) *quoting Eastport Steamship Corporation*, 372 F.2d at 1008.

 The dispute in this case is whether CHAMPUS or Fairfax County should pay

$62,483.44 to PIW. Plaintiff Carmen Johnson is not asking for money to be paid to her, however, it is she who has born the brunt of the unreasonable and recalcitrant behavior of the real parties in interest. Having examined the claims made by the parties and their unique posture vis a vis one another in the context of this lawsuit, we must conclude, unfortunately, that since plaintiff "is not suing for money improperly exacted or retained," by the United States and due and owing to plaintiff directly, the Court of Federal Claims does not have jurisdiction to grant plaintiff the relief she requests. This Court cannot direct CHAMPUS to make payment to PIW, which is not a party to the action pending before this Court. *Eastport Steamship Corporation*, 372 F.2d at 1008.

CHAMPUS regulations provide for the situation in which a beneficiary may pay the health care provider directly and then seek reimbursement from CHAMPUS. 32 C.F.R. § 199.7(h)(1). Had Ms. Johnson actually paid PIW herself, she would likely have a cognizable claim under a money mandating regulation or a claim seeking money "improperly exacted or retained" by the United States. *Eastport Steamship Corporation*, 372 F.2d at 1008; *see also, Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed.Cir.1996). However, this not being the case, if PIW has the money claim and seeks reimbursement by CHAMPUS, then it is PIW which must file a suit against the United States, rather than rely upon Ms. Johnson to litigate the matter on PIW's behalf. In the absence of a money claim against the United States upon which a judgment could be entered in plaintiff's favor, jurisdiction to resolve this litigation has not been provided to the Court by Congress under 28 U.S.C. § 1491.

With regard to plaintiff's motion pursuant to Rule 14(a) requesting this Court to notify a third party, PIW, that they might be a party at interest in this case, since this Court is without jurisdiction over the claims asserted in plaintiff's amended complaint, this Court cannot entertain plaintiff's request

---

**3.** In certain limited situations (*e.g.* bid protest cases, 28 U.S.C. § 1491(b)(2)) the Court of Federal Claims can issue injunctions or declaratory

judgments, however, this case does not present those circumstances. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

that we notify PIW of the pendency of the action. It is a fundamental concept that goes to the very core of this court's jurisdiction that unless plaintiff's petition states a claim upon which recovery may be premised, there is no basis for the exercise of our limited jurisdiction over third parties. *Rose, et al. v. The United States and Bankers Trust Company, Third Party Defendants,* 179 Ct.Cl. 224, 230, 373 F.2d 963, 966 (1967). Plaintiff cannot require PIW to initiate litigation in this Court against the United States by filing a claim which the Court has no jurisdiction to resolve. *Computer Wholesale Corporation v. United States,* 214 Ct.Cl. 786, 788, 1977 WL 25919 (1977).

Although RCFC 15(a) provides that "leave [to amend] shall be freely given," in this case, plaintiff's request for alternative relief in the form of leave to file another amended complaint must be denied. Plaintiff asserted that she would amend her amended complaint to clarify the violations of federal statute and regulations by CHAMPUS for refusing to pay for Nathaniel's care and refusing to provide an opportunity for administrative review of the denial. Pl.'s Opp'n at 15, 23. However, allowing these proposed changes to the amended complaint would be a futile exercise since this Court still would not have jurisdiction as plaintiff would still have no monetary claim against the United States upon which a judgment could be entered in her favor. *Slovacek v. United States,* 40 Fed.Cl. 828, 834 (1998).

## CONCLUSION

It is concluded that there is no subject matter jurisdiction over this case because plaintiff, Carmen Johnson, does not assert a claim for money payable to her from the United States. Therefore, plaintiff's amended complaint must be dismissed pursuant to RCFC 12(b)(1). Plaintiff's request that this Court issue a RCFC 14 notice to the Psychiatric Institute of Washington is denied given the lack of jurisdiction over this matter. Plaintiff's motion to amend her amended complaint is denied since the proposed amendments would not set forth a claim within this Court's jurisdiction. Defendant's request for dismissal pursuant to RCFC

12(b)(4) is denied since it is moot. Accordingly it is **ORDERED** that final judgment be entered dismissing this matter with no costs to be assessed.