**UNITED PACIFIC INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**The FIRST NATIONAL BANK OF OREGON, a National Banking Association, and William Kennedy, Trustee of the Bankrupt Estate of Nils Sigurd Andersson, Defendants.**

Civ. No. 62–145.

United States District Court
D. Oregon.
Aug. 29, 1963.

Douglas M. Thompson, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiff.

Walter H. Pendergrass, Pendergrass, Spackman, Bullivant & Wright, Portland, Or., for The First Nat. Bank of Oregon.

Seymour L. Coblens, Reinhardt, Coblens & Stoll, Portland, Or., for defendant, William Kennedy, trustee of bankrupt estate of Nils Sigurd Andersson.

KILKENNY, District Judge.

## STATEMENT

I adopt, insofar as applicable, the statement of facts as outlined by the Court in deciding the jurisdictional question, United Pacific Insurance Company v. First National Bank of Oregon, etc., D.C., 206 F.Supp. 94. In addition to the $13,500.43, item mentioned in said Opinion, there are involved in this litigation other amounts as follows: (1) On bankrupt's bridge contract with the City of Medford, $1,789.06, (2) on Bankrupt's Stringtown contract with the State of Oregon, the sum of $12,516.94, (3) On money paid on bankrupt's Slide Order with the United States of America, the sum of $18,369.04, and (4) Additional on Stringtown contract $1,581.58.

Beyond the "Joint Control Agreement" mentioned in the original Opinion, the bankrupt executed a number of documents commencing with May 23, 1960, and ending with January 2, 1962, in which he transferred or attempted to transfer his right, title and interest in and to earnings and future earnings under all such contracts.

On May 23, 1960, the bankrupt and his wife executed a document which is known to the record as a Bond Application and Agreement of Indemnity, which instrument in broad and concise language, assigned earnings under construction contracts and indemnified plaintiff from any and all loss in connection with contracts for the construction of certain highways in Coos County, Oregon.

Thereafter pursuant to said application and indemnity agreement the plaintiff executed on behalf of the bankrupt the following performance and payments bonds:

(a) December 19, 1960, bond for $39,844.00 with the United States of America, Bureau of Public Roads, Contract No. CPR 8 9496, Baker Creek Road, and

(b) On April 24, 1961, plaintiff issued its performance and payment bond in

the amount of $13,268.50 to the United States of America, Bureau of Public Roads, in connection with Contract No. CPR 8 9507, Smith River Bridge, and

(c) On April 24, 1961, plaintiff issued another performance and payment bond in the amount of $81,482.50, to the City of Medford relative to the City of Medford Bridge construction contract.

(d) Performance and Payment Bond dated June 12, 1961, in the sum of $158,863.50 with the Oregon State Highway Commission as obligee on the Stringtown Road contract in Coos County, Oregon.

On June 28, 1961, the plaintiff and the bankrupt executed the Joint Control Agreement mentioned in the original Opinion, and thereafter on the 10th of August, 1961, pursuant to the terms of said agreement, opened a checking account known as the Andersson-United Pacific Construction Account in the North Bend Branch of The First National Bank of Oregon.

On December 16, 1961, the Bureau of Public Roads, issued to the bankrupt what is designated as a Purchase Order for the removal of certain slides and the bankrupt proceeded to perform the requirements of such order in accordance with the terms thereof. This order was issued without any requirement for a bond. On January 25, 1962, the United States issued a check to Andersson in the sum of $18,291.04 on said Purchase Order and said check was deposited and the proceeds added to the aforesaid "Andersson-United Pacific Construction Account". As of March 6, 1962, the date of the adjudication in bankruptcy, the United States owed bankrupt on account of the aforesaid slide job the sum of $26,453.75. On September 6, 1962, the United States, acting through its General Accounting Office, offset against the said sum of $26,453.75, then due to bankrupt, the sum of $15,165.44 for bankrupt's taxes then due and owing, leaving $11,288.31 owing to the bankrupt on said slide job.

On September 6, 1962, plaintiff, commenced an action in the Court of Claims of the United States for the said sum of $11,288.31, which it alleged had been assigned to it by the bankrupt on January 2, 1962, pursuant to the provisions of 41 U.S.C. § 114(b) and Rule 19 of the Court of Claims. The Trustee [1] filed a petition in the said Court of Claims alleging that the purported assignment was invalid for various reasons and that subject is now at issue in the Court of Claims.

On June 28, 1961, and as a part of the transaction involving the said Joint Control Agreement, the bankrupt executed and delivered to plaintiff an Assignment of certain funds due under the City of Medford Contract. Subsequent to that date and prior to March 6, 1962, all funds derived from the Medford job were paid by checks payable to "United Pacific Insurance Co., assignee of Sig Andersson" and were deposited in said joint control account. At the time of the bankruptcy there was due on account of said contract from the City of Medford, the sum of $1,789.06, which sum has been deposited with the Clerk of this Court, pursuant to Order.

On June 28, 1961, and as part of the same Joint Control Agreement transaction, the bankrupt executed and delivered to plaintiff an Assignment of Claims for all monies due or which might thereafter become due from the State of Oregon under the State Highway contract in Coos County. Subsequent to June 28, 1961, and prior to March 6, 1962, all funds derived from said job were deposited in said joint control account. At the time of the petition in bankruptcy there was due from the State of Oregon the sum of $12,516.94, which, pursuant to Order, has been deposited with the Clerk of this Court.

The First National Bank of Oregon, the bank in which the deposits were made, had full notice and knowledge of the establishment of the Andersson-United Pacific Construction Account and of the terms of the agreement between

---

[1]. In Bankruptcy.

the plaintiff and the bankrupt pursuant to which the deposits were made and at all times had in its possession a copy of said agreement to which it indicated its assent. The balance of the account held by The First National Bank of Oregon under the designation "Andersson-United Pacific Construction Account", on March 6, 1962, the date of the filing of the Petition in Bankruptcy, was, and now is, $13,500.43. At the time of said adjudication, the bankrupt was indebted to the bank in the sum of $10,000.00, together with interest thereon at the rate of 7% per annum from May 29, 1961, until paid. No part of the indebtedness has been paid with the exception of the sum of $548.33 to apply on interest from May 29, 1961, to March 6, 1962, and $1,238.52 to apply on principal, there being now due and owing a principal balance of $8,761.48.

The record discloses and I find that the plaintiff, as surety for the bankrupt, paid, prior to bankruptcy, under its obligation as said surety, sums so as to leave deficits and credit balances as follows:

(1) Medford Claim No. 60–35180, Net Deficit $34,524.04.

(2) Coos County–Stringtown Road, Claim No. 60–35186, Net Deficit $18,906.06.

(3) Smith River Bridge, Claim No. 60–35187, Net Credit, $5,275.05.

(4) Baker Creek Bridge, Claim No. 60–35181, Net Credit $3,633.38.

(5) Baker Slide, Force Account, Net Deficit $13,550.83.

■ In passing on the rights of the parties to the funds which were deposited in Court and the item which was paid directly by the State to the plaintiff, it must be kept in mind that it was the Trustee, rather than the plaintiff, who insisted on this Court litigating the rights of the respective parties in and to such funds. Under the issues created by the Pre-Trial Order, and the facts as I find them, and even assuming that the Trustee might be entitled to the funds in the first instance, it would be a futile gesture to release the funds on deposit in Court to the Trustee. This Court has jurisdiction to decide the priorities to the funds in question. The Trustee, having invited the Court to decide these issues, is in no position to complain.

The parties have agreed that the bank is entitled to the allowance of a reasonable sum as attorney fees for services rendered by its attorneys in this proceeding and that the Court may affix an amount to be allowed as attorney fees.

### CLAIM OF INSOLVENCY

■■ One of the Trustee's principal contentions is that the bankrupt was insolvent at the time of the execution and delivery of the various instruments and that the plaintiff knew, or by the exercise of reasonable diligence should have known, of such insolvency. Actual knowledge of insolvency is not required in order to create a preference which would be avoidable under the bankruptcy act. It is sufficient that a state of facts has been brought to the creditors attention concerning the affairs and financial condition of the debtor that would lead a prudent businessman to conclude that the debtor was insolvent and the debtor is charged with knowledge which a reasonable, diligent inquiry would disclose. Collier on Bankruptcy, 14th Ed., Vol. 3, § 60.53, p. 969. C. A. Swanson & Sons Poultry Co. v. Wylie, 237 F.2d 16 (9 Cir., 1956); Dudley v. Eberly (D.C.Or.1962) 201 F.Supp. 728. The question of whether a particular transfer is preferential is determined under Federal law, Collier on Bankruptcy, 14th Ed., Vol. 3, § 60.39.

■ In this case, the record shows that plaintiff, at and prior to the time it secured the Joint Control Agreement, had reason to believe that the bankrupt was not able to meet his obligations in the usual and normal course of business and as early as July, 1961, the plaintiff had in its possession an audit which would indicate that the liabilities of the bankrupt might exceed the fair market value of his assets. Therefore, I find and hold, on the record before me, that as of July, a state of facts had been

brought to the attention of the plaintiff concerning the affairs and financial condition of the debtor which would lead a reasonable, prudent person to suspect that the debtor might be insolvent. However, I find on the same record that none of the transfers were made for the purpose of hindering, delaying or defrauding creditors, but, on the other hand, were made in entire good faith and for the purpose of assisting the bankrupt to fulfill his obligations and complete the contracts in question and, in fact, such transfers did not hinder, delay or defraud creditors, but instead enabled the bankrupt to complete said jobs, and to that extent, benefits the creditors of the bankrupt.

## SURETYSHIP

In my opinion, the rights of the respective parties are, in the main, governed by the law of suretyship as interpreted in Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; United States Fidelity & Guaranty Co. v. Sweeney, 80 F.2d 235 (8 Cir., 1935), and the Oregon case of Wasco Co. v. New England Equitable Ins. Co., 88 Or. 465, 172 P. 126, L.R.A.1918D, 732.

On the Federal contracts, the rights and obligations of the parties, and the titles or liens which they create *or permit*, present questions of Federal law, not controlled by the laws of any state. United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209; S. R. A., Inc. v. State of Minnesota, 327 U.S. 558, 564, 66 S.Ct. 749, 90 L.Ed. 851; United States v. Jones, 176 F.2d 278 (9 Cir., 1949).

ORS[2] 279.310, (1), defines a public contract to mean a contract made with the State, County, School District, Municipality, Municipal Corporation, or Subdivision thereof. ORS 279.310, requires of a public contract, a provision directing the contractor to make payments promptly, as due, to all persons supplying to such contractor, labor or material, for the prosecution of the work provided for in such contract, to pay all contributions and amounts due the State Industrial Accident Fund from the contractor or the sub-contractor and to pay the State Tax Commission all sums withheld from employees pursuant to the provisions of Oregon Law. ORS 279.502 (1), requires of a contractor, a bond for each public contract, for the protection of those supplying labor or materials, or both, with certain exceptions not here applicable. Such bonds must provide for prompt payment to all persons supplying labor or materials to the contractor, or his subcontractor, for all contributions due the State Industrial Accident and the State Unemployment Compensation Fund for all sums deducted from the wages of the employees. ORS 279.510.

40 U.S.C. § 270a, requires a contractor on any contract, with the United States exceeding $2,000.00 in amount, to furnish the United States a bond, with satisfactory surety, providing for, (1) a performance of the contract, and (2) a payment provision for the protection of all persons supplying labor and material in the prosecution of the work, provided for in the contract. Attention is called to the fact that only the Federal legislation (Miller Act) seems to draw some distinction between a performance bond and a payment bond for the protection of said persons. A review of the foregoing legislation reveals that all of the above bonds or undertakings, on which the bankrupt was principal and the plaintiff was surety, were required by the respective Governmental agencies and were posted principally for the protection of persons supplying labor and material in connection with the prosecution of the work under each contract.

A considerable part of the briefs of counsel has been devoted to the legal affect of the various instruments, other than the undertakings. It is my belief that it is entirely unnecessary for me to decide such fringe issues. All such contracts, with the possible exception of the assignment of the funds under the

---

2. Oregon Revised Statutes.

United States Baker Slide contract, grew out of and were executed in conformity with the original application for bonds and the instruments which were executed pursuant thereto. These instruments created the relationship of principal and surety between the plaintiff and the bankrupt. The persons supplying or to supply labor and materials under the public contracts and the bond posted in connection therewith, were beneficiary thereunder.

The legal theory which forms the basis of the decisions in Prairie State National Bank of Chicago v. United States, Henningsen v. United States Fidelity & Guaranty Co., United States Fidelity & Guaranty Co. v. Sweeney, supra, and the cited Oregon cases is that the application for the bonds, the execution of the bonds, the signing of the Joint Control Agreement and the other documents, create an equitable lien in the plaintiff, which, if created before the four months period preceding bankruptcy, are valid and enforceable against the Trustee and are not to be viewed as preferential, even though the funds upon which they are a charge are collected after the adjudication in bankruptcy. If the equitable lien is thus created it is beside the point that the formal ascertainment of the specific beneficiary was made within four months of the bankruptcy proceedings. Voltz v. Treadway & Marlatt, (6 Cir., 1932), 59 F.2d 643; Johnson v. Root Manufacturing Co., 241 U.S. 160, 36 S.Ct. 520, 60 L.Ed. 934. The plaintiff's right to an equitable lien had its inception at the time it signed as surety on the respective contracts and its rights of subrogation are not dependent upon the Joint Control Agreement or the assignments. London & Lancashire Idemnity Co. of America v. Endres, 290 F. 98 (8 Cir., 1923). Most of the authorities cited by the Trustee, upon close analysis, are not contrary to the above decisions. Those that conflict are in the decided minority and are directly opposed to the better reasoned cases. Restatement of the Law, Security, § 141.

The Trustee's attempt to distinguish Pearlman v. Reliance Insurance Co., 369 U.S. 847, 82 S.Ct. 936, 8 L.Ed.2d 8 and Danais v. M. DeMatteo Construction Co., D.C., 102 F.Supp. 874 is unconvincing. The fact that the surety completed the contracts in those particular cases has nothing whatsoever to do with the applicability of those decisions to the facts in the case at bar. The fact that the contractor may leave the job and fail to complete the contract is entirely beside the point and does not alter, change, add to or modify the law of suretyship.

With these guide posts in mind, it is in order to examine the source of the funds which constitute the $13,500.43 deposit in question.

Within the four month period immediately prior to the adjudication in bankruptcy, the following deposits were made in the joint account for each of the respective jobs and the following disbursements were made therefrom for labor and materials expended:

### MEDFORD BRIDGE JOB

| Deposit | Disbursements | |
|---|---|---|
| $11,571.81 | $17,026.00 | –$5,454.19 |

### BAKER CREEK BRIDGE

| Deposit | Disbursements | |
|---|---|---|
| $ 8,615.86 | $ 3,486.31 | +$5,129.55 |

### STRINGTOWN ROAD BRIDGE

| Deposit | Disbursements | |
|---|---|---|
| $43,570.29 | $36,397.38 | +$7,172.91 |

### SMITH RIVER BRIDGE

| Deposit | Disbursements | |
|---|---|---|
| $ 3,615.20 | None | +$3,615.20 |

### BAKER SLIDE JOB

| Deposit | Disbursements | |
|---|---|---|
| $18,291.04 | $24,786.82 | –$6,495.78 |

The above deposits and disbursements were made prior to bankruptcy.

Subsequent to bankruptcy and prior to the trial the plaintiff paid, as surety on its bonds, as required by State and Federal law, the following sums in satisfaction of labor and material claims:

Medford Bridge Job, $18,440.72.

Baker Creek Bridge, $2,223.78.

Stringtown Road Bridge, $16,151.47.

Smith River Bridge, $1,352.12.

Putting aside, for the moment, the Baker Slide Job or Order, it has been established beyond question that the plaintiff, in discharging its duties as surety under the Federal statutes and under its bonds and agreements, has paid sums far in excess of that received on the Medford Bridge and Springtown Bridge contracts and under the authorities above mentioned has an absolute right to the fund, with the possible exception of the small excesses on the Baker Creek and Smith River Bridge contracts.

■ The Oregon law on the subject of suretyship, insofar as it pertains to the facts in this case, is precisely the same as the Federal law as announced in the Sweeney case. Consequently, the plaintiff has an equitable lien, superior to the Trustee's claim, on the item of $1789.06 deposited in this Court in connection with the Medford Bridge contract and the $12,516.94 deposited in this Court in connection with the State of Oregon—Stringtown Road Bridge. This equitable right to and lien on these funds, is superior to all other liens and plaintiff is entitled to use such funds for the purpose of paying all claims required of it to be paid under its bonds and undertakings with the United States and with the State of Oregon. The surplus, if any, on each job and under each bond, shall be paid to the Trustee for the proper administration and distribution pursuant to the Bankruptcy Act.

■ Under the law, as I find it, applicable to the facts in this case, the $1,581.58 payment received by plaintiff from the State of Oregon on the Stringtown job on March 8, 1962, was a proper payment in that plaintiff had an equitable right to and lien on that sum, as well as the other sums herein mentioned. The equitable pledge herein involved, under the law of subrogation, relates back to the date of the bond, and, is, therefore, distinguishable from the mortgage lien involved in Dudley v. Eberly, supra. It occurs to me that the existence of this equitable lien in the law of suretyship is an absolute necessity in this day and age of municipal corporations and others requiring the posting of bonds on public and other construction work. If no such a right or lien existed it would be difficult, if not impossible, to entice another to act as surety.

Assuming, for the sake of argument, the soundness of the Trustee's argument that ordinarily a surety cannot claim the proceeds of bonded jobs under the equitable lien theory until it has discharged all the debts incurred in the performance of those jobs, American Surety Co. of New York v. Westinghouse Electric Manufacturing Co., 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105, the rule is unimportant when applied to my factual situation. The record shows a complete compliance with this rule on the bonded jobs, with the exception of disputed claims and a small item to the Rodda Paint Co. in the sum of $16.18, which I view as de minimis non curat lex. Plaintiff had nothing whatsoever to do with the election of the United States to offset Federal Unemployment, Withholding and Excise Taxes in the sum of $15,165.44 against the sum of $26,453.75 due on the Baker Slide Job.

The Trustee cites Paper v. Stern, 198 F. 642, 644 (8 Cir., 1912); Davis v. Woolf, 147 F.2d 629 (4 Cir., 1945), and In re Collins & Kiser Construction Co. (D.C.S.D.Iowa 1962), D.C., 204 F.Supp. 42 for the proposition that all sums deposited in the Joint Control Account from November 6, 1961, were preferential payments to or for the benefit of the plaintiff. First of all, the record is in absolute contradiction of this claim. Secondly, the cases are readily distinguishable from the facts before me. In the Paper case the debtor transferred certain property to his guarantors who paid the debtor for the property well knowing that the money was going to be used to satisfy a note on which the guarantor was liable. In Paper the transfer was outright to the guarantor while here the plaintiff had mere joint control and

an equitable lien on the fund. Davis, also involved a transfer of funds directly to the surety, as did Collins, in which cases there were no joint control agreements. Additionally, I find that no part of the money paid into the joint account within the four month period was applied on antecedent indebtedness of the bankrupt to the plaintiff. During that period of time there were deposits from the jobs into the joint account of $85,664.20, while there was disbursed from said account for labor and material claims the sum of $81,696.51, leaving a balance of $3,967.69 which was part of the $13,500.43 on deposit at the date of bankruptcy. Manifestly, nothing was paid out of these funds on antecedent indebtedness.

■■■ Trustee challenges the validity of the assignments on the ground that they did not comply with the Assignment of Claims Act, 31 U.S.C. § 203. Already I have held that the assignments are of little, if any, significance. The law of suretyship under the contractual bonds is the deciding factor. In any event, I feel that the legislation was enacted for the benefit of the United States and since the United States recognized the Joint Control Agreement and the Assignments and actually paid the money, it being paid to persons having a preference under the bonds and the statutes, the Trustee is in no position to complain.

### BAKER SLIDE JOB

Here, the Trustee claims that the $18,291.04 paid by the United States and deposited in the joint account:

(1) Amounted to a preference, in that it was paid within the four month period prior to bankruptcy, and,

(2) That the assignment under which it was paid was in fraud of creditors, and,

(3) That the assignment was void in that it did not comply with the Assignment of Claims Act, 31 U.S.C. § 203, and,

(4) That the assignment under which the money was paid was without consideration.

The record shows that the plaintiff, acting under authority of the assignment, with the consent of the bankrupt, paid out of the joint control account for labor and materials bills incurred in connection with the Baker Slide Job the sum of $24,786.82. Consequently, there is no merit in the claim that any part of the $13,500.43, on deposit in the joint account, at the time of the adjudication, was Baker Slide money. All disbursements of these funds were made in the usual and ordinary course of business in the payment of labor and materialmen. The plaintiff under its assignment was a Trustee, or agent, for the purpose of making such payments and if there was a preference, which there was not, the fund would have to be traced to the ultimate payees rather than attempting to charge the plaintiff in this cause.

It is true that the assignment did not comply with the provisions of 31 U.S.C. § 203. However, I have already noted that between the parties this type of assignment is valid. The United States recognized it and actually paid the money and the money being paid to persons who have a preference under such jobs, the Trustee is not in a position to complain.

■■■ The charge that the assignment was made for the purpose of hindering, delaying and defrauding creditors is unsupported by the record. In contradiction of that claim, the record presents a factual background which conclusively shows that the plaintiff in accepting this assignment, and others, was actually aiding and assisting the bankrupt and his creditors. The assignment was made contemporaneously with the order for the Baker Slide job, and, was obviously *a requirement* before the job could be awarded to the bankrupt. I hold and find that this assignment, as with the others, was made for the purpose of assisting the bankrupt and his creditors, rather than for the purpose of defrauding creditors and that there was no intent to hinder, delay or defraud creditors of the bankrupt.

■■■ I can find nothing in the record to support the Trustee's claim that this,

or the other assignments for that matter, was without consideration and therefore unenforceable. Whether I view this assignment as an outgrowth of the original application, or view it as a separate assignment by reason of the fact that the Baker Slide job was not contemplated at the time of the initial application, a valid consideration is obvious. The duties assumed by plaintiff under the Baker Slide job would supply a sufficient consideration.

 Another contention of the Trustee is that this Court should assume jurisdiction over the litigation now pending in the Court of Claims in connection with the balance of $11,288.31 admittedly owing by the United States of America on the Baker Slide Job. The record discloses that this litigation was pending in the Court of Claims long prior to the time any such issue was formed or attempted to be formed under the Pre-Trial Order in this case. Throughout these proceedings the plaintiff has contended that the proceeds of the Baker Slide Job remaining on deposit with the United States should not be subject to litigation in this Court as long as the law suit is pending in the Court of Claims. With this contention I agree. Since the issue was first raised in the Court of Claims and, since that Court has jurisdiction I should, as a matter of comity, decline to try that issue in this cause. Therefore, I defer to the Court which first had jurisdiction and hold with the plaintiff on this contention.

 This does not mean that I should not dispose of the legal questions presented in connection with the offset by the United States against the Baker Slide Job, of the amount of the taxes above mentioned. The record is woefully incomplete as to the particular jobs on which the items of taxes were owing. To the extent that these taxes represent obligations which were incurred on the bonded jobs, the offset by the United States should be treated in the nature of an illegal preference under bankruptcy law. However, the plaintiff has a right to offset against that claim, the sum of $13,550.83, the amount which plaintiff has expended for necessary labor and materials on the Baker Slide Job, in excess of the $18,369.04 of slide funds deposited in the joint account. The retention by the United States must be treated in the same manner as if the offset had been paid and deposited in the joint control account.

Counsel shall forthwith supply the Court with a written agreement on job allocations of the taxes offset by the United States on the Baker Side Job.

## PAYMENTS BY TRUSTEE

The Trustee is entitled to be paid out of the joint account the sum of $277.77 paid to Pate Bros. on the Traxcavator and the sum of $984.15 paid on the C. I. T. Corporation Chattel Mortgage. These payments were required by the joint agreement. The expenses and interest claimed by the Trustee in paragraph XVI of the Pre-Trial Order are disallowed.

## BANKRUPT'S SALARY

 The Trustee argues that he is entitled to the sum of $4,000.00 pursuant to Section 4(e) of the Joint Control Agreement, under which it was agreed that the bankrupt might withdraw $250.00 per week for personal and living expense. There was no requirement that the bankrupt should withdraw such amount and his failure to make such a withdrawal would most certainly constitute a waiver or an estoppel as to the classes of persons required to be paid under the terms of the bond and of the respective statutes. At best, this would be a claim against the fund only and would be secondary to all claims for labor and materials paid or to be paid. The nature of this contention is basically unsound and is unenforceable against the funds in question.

## CONCLUSIONS

Except as to the items above mentioned, I find, and it is my conclusion, that plaintiff has a right to each of the funds to the extent, as shown by the record, that it has expended money, pursuant to

the requirements of the bonds and the statutes in question, in payment of labor and materialmen on the respective jobs.

Counsel for plaintiff shall, within ten days from this date, prepare, serve and file, in conformity with the trust of this Opinion, a statement showing a proper allocation of all of the funds at hand, excluding those in the Court of Claims; such allocation to show the source of the fund, the relationship to the claims to which applied and the balance on each job, if any, to be disbursed to the Trustee. The expenses listed on pages 13 and 14, of the Pre-Trial Order, are not qualified as preferred items under the Oregon or Federal statutes, or under the bonds, and are not proper charges against these funds.

Counsel for the Trustee shall have five days after service of the allocation statement in which to prepare objections, if any, and an opposing statement, if he so desires.

Ruling is reserved on the Bank's claim for attorney fees and its claim of offset against such portion of the joint account, if any, as might be the property of the bankrupt.