In re PACIFIC MARINE DREDGING AND CONSTRUCTION, an Oregon corporation, Debtor.

TRI–CITY SERVICE DISTRICT, a county service district, Plaintiff,

v.

PACIFIC MARINE DREDGING AND CONSTRUCTION, an Oregon corporation; International Fidelity Insurance Company; Key Bank of Oregon; Bill Bernert Tugboat Service, Inc. and Columbia Fence Company, Defendants.

Bankruptcy No. 385–04577.
Adv. No. 86–0557.

United States Bankruptcy Court, D. Oregon.

Oct. 9, 1987.

Clark I. Balfour, Hibbard, Caldwell et al., Oregon City, Or., for plaintiff.

Leon Simson, Portland, Or., for defendant, Pacific Marine.

J. Ray Streinz, Portland, Or., for defendant, Intern. Fidelity.

Richard T. Anderson, Jr., Portland, Or., for defendant, Key Bank.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE,
Bankruptcy Consultant.

This matter comes before the court on cross motions for summary judgment filed by three of the defendants; Pacific Marine Dredging and Construction (debtor), International Fidelity Insurance Company (International), and Key Bank of Oregon (Key Bank).

The parties have consented to a determination of this proceeding by the bankruptcy consultant. Accordingly, this opinion is entered pursuant to Miscellaneous Order No. 87–21 of the United States District Court for the District of Oregon *Matter of Radcliffe*, 72 B.R. 20 (1987). The parties have stipulated and this court finds that this adversary proceeding is a core proceeding as defined in 28 U.S.C. § 157.

### FACTS

The parties have stipulated to the following facts.

The debtor is a marine contracting company.

In early 1984, Key Bank, provided debtor with a $500,000 line of credit for operating purposes. Key Bank took a security interest in all of debtor's accounts and general intangibles, then existing or thereafter acquired, to secure this line of credit. Key Bank perfected its security interest in February, 1984 by filing UCC Financing Statements in both Oregon and Washington. Debtor currently owes Key Bank $319,-204.66 on this secured line of credit, plus accrued interest. In addition, Key Bank has incurred costs and attorney fees of not less than $25,898.05.

On September 27, 1984, debtor entered into a contract with plaintiff, (the contract) under which debtor was to provide certain services on a construction project (construction of the Willamette Interceptor 1A Outfall Oregon City Interceptor and River Crossing). The total consideration to be paid to debtor under the contract was $884,693.

The contract required that debtor execute and deliver to plaintiff two bonds, each in an amount equal to the contract price. One, for the faithful performance of the contract (performance bond) and the

other for the payment of all laborers, materialmen and other sub-contractors (payment bond).

The contract also required that debtor promptly pay its sub-contractors for the work which they provided under the contract. It further provided that plaintiff would make periodic progress payments to debtor based upon percentages of work completed and that plaintiff would retain 5% of each of these progress payments until final completion and acceptance of the work covered by the contract.

Concerning the final payment owed under the contract, the contract, in section 7.01C states that:

Before the owner pays the contractor his final payment for the work, the contractor shall sign and deliver to the owner a release of liens and claims sworn to under oath and duly notarized. The release shall state that the contractor satisfied all claims and indebtedness of every nature in any way connected with the work, including ... amounts due to sub-contractors, accounts for labor performed and materials furnished ...

Prior to the execution of the contract, Debtor obtained its payment and performance bonds from International, each in the amount of $884,693. Both bonds were issued on September 12, 1984 and properly executed on that date.

Debtor commenced work on the construction project on October 14, 1984. Much of the work called for under the contract was performed by sub-contractors of debtor.

Pursuant to the contract, debtor billed plaintiff for progress payments. From February 22, 1985 to August 23, 1985 four progress payments were paid, by plaintiff to debtor, in the total amount of $747,909.72.

The fifth progress billing is dated November 1, 1985. It states that 98.79% of the work to be done under the contract had been completed. That billing requests an earned amount of $82,368.80. Plaintiff withheld payment of this sum upon notice of debtor's bankruptcy filing and upon notice that various sub-contractors had claims for unpaid goods and services.

On November 8, 1985 debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The contract was not terminated by plaintiff or debtor. Debtor substantially completed the contract. Certain minor punch list items were required to be performed prior to final completion of the contract. Plaintiff requested, post-petition, that debtor complete the minor work. Notice was given to International and debtor that if the work was not performed, plaintiff would issue a unilateral change order deleting the work from the contract and would deduct the estimated value thereof from the contract price. Plaintiff would then accept the job. Plaintiff received no response from either debtor or International. The unilateral change order was entered and approved by plaintiff's county commissioners.

Debtor did not make payments due to all sub-contractors for their services on the contract. From November 7, 1985 to March 3, 1986, 11 sub-contractors made claims against the payment bond for unpaid amounts due. International has paid the sub-contractors an aggregate total of $372,794.17. All of these payments were made after debtor filed its Chapter 11 petition (post-petition).

On November 5, 1986, plaintiff commenced this adversary proceeding in the nature of interpleader. Plaintiff deposited $117,393.20 into court. This amount represents the remaining contract balance (after deductions by plaintiff resulting from the unilateral change order), including the 5% retainage from progress payments, plus accrued interest thereon.

The following additional facts are established by the record in this proceeding.

The debtor has answered plaintiff's complaint contending that the amount interpled into court is insufficient. By an order entered herein on December 31, 1986, that issue has been severed and is not part of the matters dealt with by the cross motions for summary judgment.

Two of the defendants, Bill Bernert Tugboat Service, Inc. and Columbia Fence Company have been dismissed by an order entered, herein, on May 29, 1987 on the basis that these defendants have been paid by International and make no further claim to the funds which have been interpled (the fund).

Finally, there are competing claims by the parties requesting that they be awarded attorneys' fees resulting from this adversary proceeding. The issue of attorneys' fees is not, however, before this court for the purpose of resolving the cross motions for summary judgment.

### STATUTORY BACKGROUND

A brief overview of Oregon's statutory payment scheme for public contracts is in order. Oregon law defines a public contract as any purchase, lease or sale by a public agency (owner), of personal property, public improvements or services other than agreements which are for personal services. O.R.S. 279.011(4).

O.R.S. 279.312 in part provides:

Every public contract shall contain a condition that the contractor shall:

(1) Make payment promptly, as due, to all persons supplying to such contractor labor or material for the prosecution of the work provided for in such contract.

Before commencing work on any public contract, a general contractor must normally post two types of bonds. One, a payment bond, insures the payment of those persons who provide labor or material for the contract; the other, a performance bond, insures the general contractor's faithful completion of the contract. Each bond is in an amount equal to the contract price. O.R.S. 279.029. Payment bonds are "... required as substitutes for the security offered by mechanics' liens on land and improvements" ... as ... "No lien, mechanic's or otherwise is enforceable against public property." *School District No. 1 v. A.G. Rushlight & Company*, 232 Or. 341, 348, 375 P.2d 411, 414 (1962). Should the general contractor default, any aggrieved party may make claim upon the payment bond by notification to the owner. O.R.S. 279.526.

On public contracts, general contractors are paid in installments as the work progresses. These progress payments are approximately equal to the percentage of the full contract price which corresponds with the percentage of work completed to that date. O.R.S. 279.575. To protect the owner against losses and as further security for the laborers and materialmen, the owner may reserve, as plaintiff did in this case, up to five percent (5%) of the earned progress payments to be paid as part of the contract's final payment. O.R.S. 279.575(2) & (3).

If the contractor fails to make prompt payment of any claim for labor or services furnished to the contractor, the owner may pay such claim to the person furnishing the labor or services and charge the amount of the payment against funds due or to become due the contractor. O.R.S. 279.314. If notices of unpaid bills are filed, the owner "... will pay the bill out of the retainage or require the debtor contractor to pay as a condition to his receiving the balance of the contract price." *Rushlight*, 232 Or. at 350, 375 P.2d at 415.

### ISSUES

International claims it is entitled to the fund. It maintains that it holds an equitable lien on the fund which is superior to all other liens and interests, including any security interest asserted by Key Bank and any rights of the debtor in this case. Further, International maintains that the fund is not property of the estate. Accordingly, the debtor and Key Bank do not have any interest in the fund. Finally, International urges that public policy considerations dictate that the surety should prevail under the facts as set forth above.

Key Bank claims it is entitled to the fund. It asserts that International's lien was created post-petition and is, therefore, void pursuant to 11 U.S.C. § 362(a)(4). Key Bank further contends that the fund is property of the estate which should be released to Key Bank pursuant to its prior perfected security interest in the debtor's

accounts and general intangibles. In the alternative, assuming that International holds a valid pre-petition equitable lien, Key Bank asserts that this lien is, nonetheless, inferior to Key Bank's prior perfected security interest. Finally, Key Bank submits that policy considerations favor a ruling in favor of Key Bank under the facts as set forth above.

Debtor contends that any lien held by International in the fund is avoidable by debtor acting as the debtor-in-possession in this case pursuant to 11 U.S.C. § 544.

Both Key Bank and debtor rely heavily upon *In re North Side Lumber Company*, 59 B.R. 917 (Bankr.D.Or.1986) to support their argument that International's lien rights, if any, were created post-petition and are, therefore, void.

## DISCUSSION

The analysis of the rights of the competing parties to the fund requires a two tier inquiry. *In re North Side Lumber Company, supra.* This court must first look to state law to determine the parties' respective rights to the fund. Those rights, once defined, are then examined within the context of the Bankruptcy Code.

The contract is clearly a public contract as defined by Oregon law. In an unbroken line of decisions, the courts have held that when a surety executes a bond with a general contractor on a public contract, in favor of the owner, there arises, in the surety's favor, an equitable right to or lien on funds the owner properly withholds from the contractor. These funds are in the nature of a trust to reimburse the surety who is forced to pay on its bond. *Derby v. United States Fidelity and Guarantee*, 87 Or. 34, 169 P. 500 (1917); *Wasco County v. New England Equitable Ins. Co., et al.*, 88 Or. 465, 172 P. 126 (1918); *New Amsterdam Casualty Co. v. City of Astoria, et al.*, 256 F. 560 (D.Or. 1919); *United Pacific Ins. Co. v. First National Bank of Oregon*, 222 F.Supp. 243 (D.Or.1963). The courts, under equitable principles, have recognized that this right is essentially part of the bargain between the three parties involved, the surety, the

owner, and the general contractor. "The reserved fund is as much for the indemnity of the surety as it is for the security of the owner for whom the work is to be performed...." *Wasco County v. New England Equitable Ins. Co., et al.*, 172 P. at 129. This right is further evidenced by the complimentary proposition that if the owner fails to retain the percentage fixed by the contract as retainage, the surety is discharged from the bond. *Id.* The surety's equitable lien "... is superior to all other liens." *United Pacific Ins. v. First National Bank of Oregon*, 222 F.Supp. at 250. Judge Kilkenney has expressed the policy behind this surety's lien:

> It occurs to me that the existence of this equitable lien in the law of suretyship is an absolute necessity in this day and age of municipal corporations and others requiring the posting of bonds on public and other construction work. If no such a right or lien existed it would be difficult, if not impossible to entice another to act as surety. *United Pacific Ins. v. First National Bank of Oregon*, 222 F.Supp. at 250.

■ Thus, under Oregon law, International's claim to the fund is superior to the competing claims of Key Bank and debtor as International's equitable lien takes priority over Key Bank's asserted security interest and the debtor's status as a hypothetical lien creditor pursuant to 11 U.S.C. § 544.

Key Bank and debtor maintain, however, that International's equitable lien was created upon International's post-petition payments to the various unpaid sub-contractors thus, its lien is void under 11 U.S.C. § 362(a)(4) which prohibits the creation of post-petition liens against property of the estate. Key Bank and debtor rely heavily upon *In re North Side Lumber Company, supra.* to support this position.

International's claim to the fund prevails on two alternative grounds. First, that the fund is not property of the estate. Second, in the alternative, if the fund is property of the estate, International's lien was created pre-petition.

■ Generally, 11 U.S.C. § 541 provides that all legal or equitable interests of the debtor in property as of the commencement of the case becomes property of the estate. Here, debtor breached the contract by not paying its sub-contractors. Plaintiff exercised its statutory and contractual rights and withheld the final payment.

This court agrees with other courts that have found that the contractor's failure to pay for labor and materials is just as much a failure to perform and carry out the terms of the contract as an abandonment of the work. *United States v. Commonwealth of Pennsylvania., Department of Highways*, 349 F.Supp. 1370, (E.D.Pa.1972); *Atlantic Refining Company v. Continental Gas Co.*, 183 F.Supp. 478 (W.D.Pa. 1960). In short, plaintiff is not contractually obligated to pay the fund to debtor. Due to debtor's breach of contract, the debtor does not have any legal or equitable interest in the fund. Accordingly, the fund is not property of the estate.

■ In addition, Key Bank's security interest cannot attach to funds in which the debtor has no rights. O.R.S. 79.2030(1)(c). Accordingly, International is entitled to the fund. *United States v. Commonwealth of Pennsylvania, supra., Atlantic Refining Company v. Continental Gas Co., supra.; Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

■ In the alternative, if the fund is considered to be property of the estate, the reliance placed by Key Bank and debtor on *In re North Side Lumber Company, supra*, is misplaced.

There, the court addressed the question of when a statutory lien (under O.R.S. 656.-564) in favor of a workers' compensation insurer for unpaid premiums is created. The court analogized the lien filing requirements under that statute to the filing requirements for mechanics' liens and found that the insurer's lien was created when it was filed. The lien was filed, thus, created, post-petition. It was, therefore, void under 11 U.S.C. § 362(a)(4). That the effective date of the lien might relate back to some time pre-petition was to no avail as the relation back was triggered by the very act (the filing) which § 362 prohibits.

Here, unlike *North Side*, the surety has no filing obligations. The lien is one created by equity, not by statute. The cases are clear that the lien is created when the surety executes its bond with the general contractor. *United Pacific Ins. v. First National Bank of Oregon, supra.; Wasco County v. New England Equitable Ins. Co., et al., supra.* In this case, International's lien was created pre-petition and before any preference period defined in 11 U.S.C. § 547.

It seems clear that the surety's lien continues until the general contractor has fulfilled all of his obligations under the contract, at which time it is extinguished. If the contractor should breach the contract and the surety is forced to pay on its bond, then the lien ripens into a claim for reimbursement against funds the owner has properly withheld.

All monies interpled by plaintiff were properly withheld under plaintiff's statutory and contractual rights, as the final payment was not payable to debtor until plaintiff received assurance that debtor had paid all sub-contractors by providing a notarized release stating that the contractor has satisfied all claims of laborers and materialmen. Debtor never provided such a release. Further, the fund was properly withheld because debtor materially breached the contractual provision which required prompt payment to laborers and materialmen. Finally, plaintiff was well within its statutory rights, upon receiving notice of unpaid claims, to withhold the funds.

It is undisputed that: (1) International has paid claims on its payment bond in excess of the fund; (2) none of the parties dispute the reasonableness of these payments; and (3) debtor admits in its schedules, *as undisputed* debts owing to those sub-contractors that International subsequently paid in excess of the fund.

There remain no material issues of fact and International is entitled to judgment in the full amount of the fund. A judgment consistent herewith shall be entered.

This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052; they shall not be separately stated.