**In re The MASSART COMPANY, Debtor.**

**UNITED PACIFIC INSURANCE COMPANY, Plaintiff–Appellant,**

**v.**

**Robert MOTTNER, Trustee for the Massart Company, Defendant–Respondent.**

**No. C89–524.**

United States District Court, W.D. Washington, at Seattle.

Aug. 3, 1989.

Jan Sokol, Stafford Frey Cooper & Stewart, Portland, Or., for plaintiff-appellant.

James F. Rigby, Jr., Law Offices of James Rigby, Seattle, Wash., for defendant-respondent.

## ORDER REVERSING DECISION OF UNITED STATES BANKRUPTCY COURT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiff United Pacific Insurance Company's appeal from the decision of the United States Bankruptcy Court. Having reviewed the record, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTS

The parties do not dispute the underlying facts in this matter. On November 9, 1983, debtor Massart Company ("Massart") signed a public works contract known as "Lakewood Pump Stations Phase II" with Pierce County. *See* Order of Summary Judgment, appendix # 13. On that same day, plaintiff United Pacific Insurance Company ("United Pacific") issued a performance bond and a payment bond for the project. Previously, on April 1, 1982, Massart and United Pacific executed a continuing Agreement of Indemnity—Contractors Form. From the time United Pacific issued the payment and performance bonds, it has acted as Massart's surety.

During the fall of 1985 and spring of 1986, various subcontractors filed claims for payment with Massart and United Pacific. On July 21, 1987, the Superior Court of King County entered judgment on an arbitration award against Massart for nearly $1.2 million. Before United Pacific paid the judgment for Massart, however, on October 1, 1987, Massart filed for bankruptcy relief under Chapter 11. On May 6, 1988, Pierce County paid over the remaining progress payment under the construction contract, $202,744.22, to the bankruptcy trustee.[1] On May 31, 1988, United Pacific filed a complaint for declaratory judgment, alleging that the final progress payment belonged to United Pacific.

On December 9, 1988, the Bankruptcy Court held its final hearing on Massart's and United Pacific's cross-motions for summary judgment. The court made three findings at issue on appeal: (1) the progress payment was the property of the bankruptcy estate under 11 U.S.C. § 541, (2) United Pacific did not have a perfected security interest under the indemnity agreement, and (3) United Pacific's equitable rights of subrogation for Massart did not arise until United Pacific paid the outstanding claims against Massart. United Pacific now appeals from the adverse decision of the Bankruptcy Court.

## II. DISCUSSION

This court reviews the legal conclusions of the Bankruptcy Court *de novo. In re Bishop, Baldwin, Rewald, Dillinham & Wong,* 819 F.2d 214, 215 (9th Cir.1987). United Pacific alleges that under 11 U.S.C. § 541, the trustee in bankruptcy did not acquire any property interest in the final progress payment. That section provides that an estate in bankruptcy includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. United Pacific then argues that its rights as surety supersede those of the trustee, and therefore, it should receive the progress payment. *Pearlman v. Reliance Insurance Compa-*

---

1. Pierce County also paid over the contract retainage fund to the trustee, which was then paid to United Pacific. *See* RCW 39.08; Transcript of Proceedings at 10, appendix # 19.

*ny,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).

In truth, United Pacific's argument simply restates the issue on appeal: does United Pacific have a property interest in the progress superior to, or prior to the trustee's? The Supreme Court in *Pearlman* set forth the proper inquiry.

> Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee. The Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors. So here if the surety at the time of adjudication was, as it claimed, either the outright legal or equitable owner of this fund, or had an equitable lien or prior right to it, this property interest of the surety never became part of the bankruptcy estate.

371 U.S. at 135–36, 83 S.Ct. at 234.

The court finds that United Pacific's equitable lien on the progress payments extends back to the date it executed the payment and performance bonds, and therefore, United Pacific's equitable rights of subrogation supersede the property interests of the trustee. The parties agree that when United Pacific paid the outstanding debts of Massart, it became subrogated to Massart's rights to the progress payments.

> Subrogation exists when a party, not a volunteer, pays another's obligation for which the subrogee has no primary liability in order to protect such subrogee's own rights and interests.

*Newcomer v. Masini,* 45 Wash.App. 284, 288, 724 P.2d 1122 (1986); *see also Transamerica Title v. Johnson,* 103 Wash.2d 409, 417, 693 P.2d 697; *Johnson Service Co. v. Roush,* 57 Wash.2d 80, 92, 355 P.2d 815 (1960).

The parties hotly dispute, however, *when* United Pacific's equitable rights of subrogation arose. *See* Order of Summary Judgment at 7, appendix # 13 ("When, under the law of equitable subrogation, does a surety become subrogated to the rights of the contractor, not in a performance situation, but in a situation only involving the payment of labor and material obligations?"). The Bankruptcy Court ruled that United Pacific's equitable rights date from time United Pacific paid Massart's debts, and that since United Pacific first paid a subcontractor after Massart declared bankruptcy, the trustee's lien is prior to United Pacific's. *Id.*

This court reaches the opposite conclusion. The parties, and the Bankruptcy Court, acknowledge that Washington law is unclear on the priority of a surety's equitable lien. *Id.* at 7 ("Given the dearth of case law on this matter, one is forced to go back to the classic law of suretyship").[2]

Traditional equitable principles state that a surety receives an equitable lien on a contractor's proceeds from the moment that the surety executes its payment and performance bonds.

> A surety who performs under a bond upon the contractor's default has an equitable lien on funds held by the owner; the lien arises upon the execution of the bond but does not become enforceable until the surety suffers a loss by making payments pursuant to the obligation under the bond.

10 Appleman, *Insurance Law & Practice,* § 6509 at 456; Simpson, *Law of Suretyship,* § 47 (1950). Federal law is completely in accord.

> The legal theory which forms the basis of the decisions in *Prairie State National Bank of Chicago v. United States,* [164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896)], and *Henningsen v. United States Fidelity & Guaranty Co.,* [208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547

---

**2.** This court knows of only one Washington case which dates a surety's right to subrogation, *Johnson Service,* 57 Wash.2d at 92, 355 P.2d 815. The court finds *Johnson Service* inapplicable, however. That case held that under the terms of the surety's bond application, the surety's lien dated from the payment of the contractor's debts. *Id.* Here, the indemnity agreement between United Pacific and Massart states that United Pacific's lien dates back to the execution of the bonds.

(1908) ] ... is that the application for the bonds, the execution of the bonds, ... and other documents, create an equitable lien in plaintiff, which, if created before the four months period preceding bankruptcy, are valid and enforceable against the trustee and are not to be viewed as preferential, even though the funds upon which they are a charge are collected after the adjudication in bankruptcy ... The plaintiff's right to an equitable lien had its inception at the time it signed as surety.

*United Pacific Ins. Co. v. First National Bank of Oregon,* 222 F.Supp. 243, 249 (D.Or.1963) (citations omitted); *Pearlman,* 371 U.S. at 139, 83 S.Ct. at 236 (surety's right of subrogation superior to bankruptcy trustee).

The Oregon state courts have considered and resolved the exact question presented here.

In an unbroken line of cases, the courts have held that when a surety executes a bond with a general contractor on a public contract, in favor of the owner, there arises, in the surety's favor, an equitable right to or lien on funds the owner properly withholds from the contractor. These funds are in the nature of a trust to reimburse the surety who is forced to pay on its bond.

*In re Pacific Marine Dredging and Const.,* 79 B.R. 924, 928 (Bankr.D.Or.1987). Thus, United Pacific's lien on the progress payment dates back to the execution of United Pacific's bonds, November 9, 1983.

This court also finds as a matter of equity that United Pacific should have a superior right to the progress payment. But for the fact that Massart declared bankruptcy prior to the date that United Pacific paid Massart's debts, United Pacific would have clear possession of the funds. The Bankruptcy Court believed that since Massart completed the building before defaulting and declaring bankruptcy, that United Pacific somehow had a lesser claim. *See* Oral Transcript at 27–29, Appendix # 19. However, United Pacific clearly stepped in for Massart and performed Massart's obligations, albeit financial rather than structural. United Pacific deserves compensation for this no less than if United Pacific had actually performed the contract for Massart.[3]

Finally, the court finds that as a matter of public policy, United Pacific should have a superior lien on the progress payment. The District Court for the District of Oregon once again has stated this in clear and persuasive terms.

[T]he existence of this equitable lien in the law of suretyship is an absolute necessity in this day and age of municipal corporations and others requiring the posting of bonds on public and other construction work. If no such right or lien existed it would be difficult, if not impossible, to entice another to act as a surety.

*United Pacific Ins. Co. v. First National Bank of Oregon,* 222 F.Supp. at 250. It makes no sense to punish a surety for paying claims after a contractor declares bankruptcy, and the equitable rights of subrogation exist to protect a surety in just these circumstances. Therefore, the court finds that United Pacific's equitable lien arose when it executed its bonds in favor of Massart, November 9, 1983.

The court rules as a consequence, that Massart did not have a legal or equitable interest in the progress payment at the time it declared bankruptcy. *See Pearlman,* 371 U.S. at 136, 83 S.Ct. at 234–35. Thus, under 11 U.S.C. § 541, the progress payment was not the property of the bankruptcy estate, and the trustee should turn the progress payment over to United Pacific.[4]

---

**3.** The court makes this holding only for United Pacific's subrogation to Massart's, the contractor's, rights. Clearly, Washington law requires actual performance of a contract before United Pacific becomes subrogated to Pierce County's, the owner's, rights. *See Johnson Service,* 57 Wash.2d at 94, 355 P.2d 815.

**4.** Since the court finds United Pacific had an equitable lien as subrogee of Massart's rights, it does not reach United Pacific's claims under the indemnity agreement.

614

THEREFORE, the decision of the Bankruptcy Court is REVERSED.