**In re COMCRAFT, INC., Debtor.**

**AMWEST SURETY INSURANCE CO., Plaintiff,**

v.

**U.S. NATIONAL BANK OF OREGON; Boyd C. Yaden, Trustee, for Bankruptcy Estate of Comcraft, Inc., Defendants.**

Bankruptcy No. 695–63697–fra7.

Adversary No. 96–6117–fra.

United States Bankruptcy Court,
D. Oregon.

Feb. 26, 1997.

Laura J. Walker, Portland, OR, for Plaintiff.

Wendell G. Kusnerus, Portland, OR, for Defendants.

## MEMORANDUM OPINION

FRANK R. ALLEY, III, Bankruptcy Judge.

### I. INTRODUCTION

Comcraft, Inc., the Debtor, was a contractor specializing in the installation of business telephone systems. At the time it filed its petition for relief, one of its major projects was the installation of a phone system for the Bethel School District ("Bethel"). Plaintiff Amwest Surety Insurance Co. ("Amwest") issued the payment and completion bonds required by state law for public construction projects. Defendant United States National Bank ("USNB") is a secured creditor of Comcraft's. This case involves the competing claims of the surety and the secured creditor to funds paid by Bethel to Comcraft, and retained by Comcraft, after its Chapter 11 petition was filed. I find that, under Oregon law, the surety's right is superior to that of the lender.

## II. PROCEDURAL ISSUES

Amwest seeks a declaratory judgment to the effect that it is entitled to receive the balance of the monies paid by Bethel to Comcraft now held by Comcraft's chapter 7 trustee. USNB raised several defenses, which will be discussed below. The Trustee and NEC America, another secured creditor, were joined as defendants but have not participated in the case.

■ Amwest and USNB have filed cross-motions for summary judgment. The motions were accompanied by extensive documentation. Amwest submitted a detailed "Concise Statement of Material Facts", pursuant to Local ·Bankruptcy Rule 220–9. USNB did not submit such a statement prior to oral argument. However, it did submit a "Supplemental Concise Statement of Material Facts" after argument. Amwest objects, and asks that USNB's statement be disregarded. In the alternative, it seeks leave to respond to the statement.

The purpose of the rule requiring a concise statement of facts is to assist the court in analyzing the parties' motions by pointing the way to those items supporting the movant's claims. The Court may, but is not required to limit its review to the concise statement.[1] The court may, in its discretion, permit additional or—as here—untimely statements if doing so will enhance its ability to afford the parties a complete review of the issues before it. To do so does not constitute a reopening of the record, since the concise statement is no more than a guide to the evidentiary record created by the parties' supporting affidavits. However, the allowance of an untimely statement relieves the party submitting it of the effect of failing to controvert the moving party's statement. See LBR 220–9(f).

Summary judgment is appropriate when the pleadings, discovery responses, and supporting affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. FRBP 7056, incorporating FRCP 56. Based on the record now before the court, including both parties' concise statements of material facts, it appears that the material facts are undisputed.

## III. FACTS

On June 14, 1995 Comcraft contracted with the Bethel School District ("Bethel") to upgrade Bethel's telephone system and provide wiring for a voice and data system. The combined value of these contracts was $439,-954.11. Plaintiff issued payment and performance bonds for each of the contracts.

Comcraft commenced performance under the contracts the same month, and had substantially completed performance prior to its bankruptcy petition on September 26, 1995.

In the course of its efforts under the Bethel contract, Comcraft obtained materials from NEC, Graybar and Applied Voice Technology. The sale of the goods required payment within 30 days of delivery. Comcraft failed to pay for the materials within the time provided, and each of the suppliers gave notice of bond claims to Plaintiff after the bankruptcy petition was filed.

As noted, Comcraft filed a petition for relief under Chapter 11 of the Bankruptcy Code on September 26, 1995. Three days later, on September 29, Bethel made a progress payment to Comcraft in the amount of $178,051.39. An additional $1,039.98 was paid on October 23, 1995. By that time the contract had been substantially completed.

At the time the petition for relief was filed, Defendant USNB had a valid and perfected security interest in Comcraft's accounts. The security interest extended to the proceeds of the contract paid by Bethel to Comcraft. Since Comcraft required the use of

---

1. LBR 220–9 states, in part:

   (e) *Scope of Judicial Review:* Except as otherwise required by law, when resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.

   (f) *Admission of Material Facts:* For purposes of a motion for summary judgement, material facts set forth in the concise statement of the moving party will be deemed admitted unless controverted by a separate concise statement of the opposing party.

the proceeds to continue its operations, it applied for an order permitting use of USNB's cash collateral. Hearings on the motion were held on October 1, October 11, and October 26, 1995. A stipulation between USNB, NEC, and the Debtor for the use of cash collateral was entered at the October 26 hearing. Thereafter Debtor used a portion of the cash collateral for post-petition labor and materials on the Bethel contracts in the amount of $10,668.20. The balance of the funds expended were used for unrelated purposes.

By November 4, 1995 Amwest had asserted its right to the proceeds of the contract. At a hearing on November 4, 1995 the parties agreed to freeze the funds on deposit in the Debtor–in–Possession's cash collateral account pending a determination of the respective rights of Amwest and USNB.

In June 1996 Plaintiff made payments to suppliers of Comcraft in connection with the Bethel contract totaling $217,556.22. An additional $3,306.16 was paid directly to Bethel on the performance bond claim.

The case was converted to Chapter 7 on November 21, 1995. During the course of the Chapter 11 case a total of $293,640.96 was deposited by Comcraft to its cash collateral account; of that sum, $179,091.37 is attributable to the Bethel School District contract.

## IV. ANALYSIS

*Priority of Claims to Funds*

The Chapter 7 trustee now holds the balance of the funds paid by Bethel to the Debtor. Plaintiff's complaint and motion for summary judgment seek a determination that it has a superior claim to these funds.

■ The competing claims of the bank and the surety are governed by state law. *In re Dahlquist,* 34 B.R. 476, 484 (Bankr.D.S.D. 1983). Oregon law is thoroughly discussed in a leading case in this area, *In re Pacific Marine Dredging and Construction,* 79 B.R. 924 (Bankr.D.Or.1987). In that case the plaintiff was a county service district, and owner of a project in which the debtor was a contractor. The debtor had substantially completed the contract, but had failed to pay several subcontractors. The subcontractor's claims were eventually paid by the surety. Given the competing claims of the surety and the secured creditor, the owner initiated an adversary proceeding interpleading the funds.

Citing to an "unbroken line of cases" from the Oregon courts, the *Pacific Marine* court held that Oregon law provides that a surety which executes a bond on a public contract has an equitable lien on funds the owner properly withholds from the contractor. 79 B.R. at 928. The lien is created when the bond is executed and continues until the general contractor has fulfilled all of his obligations under the contract. *Id.* at 929. It follows that the lien is superior in priority to that of the contractor's secured lender. The holding was consistent with that of the District Court in *United Pacific Ins. v. First National Bank of Oregon,* 222 F.Supp. 243 (D.Or.1963).

■ The instant case differs from *Pacific Marine* in one respect: the fund in question was not retained by the project owner, but paid to the contractor. This does not change the result. A surety which is forced to pay a bond claim is subrogated to the subcontractor or materialman's claim against the contractor in existence immediately prior to the payment. *New Amsterdam Casualty Co. v. City of Astoria et al.* 256 F. 560 (D.Or.1919); *Mayer v. First National Bank of Oregon,* 260 Or. 119, 130, 489 P.2d 385, 391 (1971). The purpose of the equitable lien is to protect that right. Since the lien exists to protect the surety's subrogation right, it remains in effect as long as the right does. The right subrogated to is the subcontractor's claim against the contractor; payment of the funds by the owner to the contractor does not diminish that right. It follows that the lien follows the funds into the hands of the contractor. This result is supported by the strong public policy in Oregon supporting the surety's claims. *United Pacific Ins. v. First National Bank of Oregon,* 222 F.Supp. 243, 250 (D.Or.1963), *In re Pacific Marine Dredging and Construction,* 79 B.R. 924, 928 (Bankr.D.Or.1987).

USNB argues that Amwest's subrogation rights vanished when Bethel paid Comcraft, because Bethel's rights vanished when it disbursed the funds. However, Amwest did not pay Bethel, it paid the subcontractors, and it is the subcontractors' claims to which Amwest was subrogated. These claims remained viable after Comcraft was paid.

USNB also cites to a series of cases in which the secured creditor prevails. In these cases the funds had either been paid over to the secured creditor or the court relied on state law or contract provisions not relevant in this case. In this case, the funds are in the hands of the bankruptcy trustee; these cases are not controlling.

*USNB's Defenses*

USNB claims that, even if Amwest has a valid lien, it is barred from asserting it. It claims, in essence, that Amwest had a duty to assert its claim to the funds paid to Comcraft before the entry of the cash collateral order. Had it done so, USNB, having become aware to the surety's claim, would not have consented to the use of its collateral.

This misses an important point: the funds were the surety's collateral as well. While USNB states that it would not have agreed to the use of its cash collateral if it had been aware that Amwest had a superior right to the Bethel funds, Amwest was directly injured by the debtor's use of the funds since the balance remaining on hand is less than the amount paid by Amwest to the subcontractors. USNB could have protected itself by requiring that the Bethel funds, which it knew to be bonded, be deposited to a separate account and used to pay bonded debt. This was not done. The equities do not favor USNB as it asserts.

*Constructive Trust*

O.R.S. 279.312(1) requires that every public contract contain a condition that the contractor "make payment promptly, as due, to all persons supplying to such contractor labor or material for the prosecution of the work provided for in such contract." This provision is included in the construction contract between the Bethel School District and the contractor, Comcraft, at ¶ 9.6.2: "The Contractor shall promptly pay each Subcontractor, upon receipt of payment from the Owner [Bethel], out of the amount paid to the contractor on account of such Subcontractor's portion of the Work, the amount to which said Subcontractor is entitled...." This contractual provision obligates the contractor, Comcraft, to make payments to Subcontractors *out of the payment* received by the owner, Bethel.

Even more importantly, O.R.S. 279.445(4)(a) requires that every public contract contain "[a] payment clause that obligates the contractor to pay the subcontractor for satisfactory performance under its subcontract within 10 days *out of such amounts as are paid to the contractor by the public contracting agency* under such contract." [Emphasis added]. Clearly, Oregon law gives subcontractors a right to be paid by the contractor from the specific proceeds of a publicly funded project. This is the right to which Amwest was subrogated when it paid the subcontractors.

The doctrine of constructive trusts, as well as of equitable liens, has long been recognized by Oregon courts. *In re Angus,* 9 B.R. 769 (Bankr.D.Or.1981) (citing *Hughes v. Helzer* 182 Or. 205, 185 P.2d 537 (1947); *Oregon Mutual Insurance Co. v. Cornelison,* 214 Or. 501, 330 P.2d 161 (1958)). Because the contractor, Comcraft, had an obligation to pay the subcontractors out of the proceeds of the Bethel contract and Amwest, as subrogee to the subcontractors it paid, has an independent right to be paid from those funds, the funds in question, to the extent still held by the bankruptcy trustee, are impressed with a constructive trust to make such payments.

*Tracing*

USNB argues that even if Amwest were found to be entitled to the progress payment from Bethel in the hands of the contractor, those funds were commingled with other funds in the cash collateral account and have already been, to a large extent, expended using a first-in-first-out method of tracing the funds. USNB asserts that this tracing method, or a pro-rata method, should be used in cases such as this where equity does not favor either of the competing parties.

Amwest argues that the "lowest intermediate balance" tracing method should be used.

That method has evolved from the equitable principals of trusts and is recognized in the Ninth Circuit. *See Republic Supply Co. of California v. Richfield Oil Co. of California,* 79 F.2d 375, 380 (9th Cir.1935); *In re R & T Roofing Structures & Commercial Framing, Inc.,* 887 F.2d 981, 987 (9th Cir.1989). All parties agree that the lowest intermediate balance method will result in Amwest being entitled to all the remaining funds being held by the trustee.

Amwest has an equitable lien against the progress payment from Bethel in the hands of the contractor and Amwest is, in effect, a third party beneficiary to the progress payment which was impressed with a constructive trust in favor of the subcontractors. Public policy favors protection of sureties' interests so as to encourage those to act as surety on public and other construction work. *See generally United Pacific Insurance Co. v. First National Bank of Oregon,* 222 F.Supp. 243 (D.Or.1963); *Tri–City Service District v. Pacific Marine Dredging and Construction,* 79 B.R. 924 (Bankr.D.Or.1987). In addition, public policy also favors protection of subcontractors and materialmen on publicly funded projects as evidenced by the requirements that all public contracts be bonded and that public contracts obligate the contractor to pay subcontractors and materialmen from the proceeds of the contract. Given the above, and the general equities involved, the lowest intermediate balance method is the appropriate tracing method to determine how much of the Bethel payment remains in the hands of the trustee and is thus payable to Amwest. As stated above, Amwest is therefore entitled to the remaining funds held in the cash collateral account by the Chapter 7 trustee.

## V. CONCLUSION

Amwest is entitled to the remaining funds held by the trustee in the debtor's cash collateral account due to the equitable lien it holds against those funds as surety and as subrogee to the rights of the subcontractors which it paid pursuant to its bond. Consequently, Amwest's motion for summary judgment is granted and USNB's motion is denied. Amwest shall submit an order consistent with this opinion.